CHARLES W. WHITE *et al.*

*v.*

QUINCY J. CANNON *et al.*

*Filed at Ottawa June 16, 1888.*

1. GIFT—*of an executed gift, as distinguished from a mere promise to make a gift.* Where a husband and wife conveyed lands of the former to a third person, at the request of the latter, under a promise of the grantee to pay off certain liens on the premises, and then to convey the same to the wife, and the grantee paid off the liens, such payment will constitute an executed gift to the wife, and not a mere promise to make a gift.

2. TRUST—*by implication—Statute of Frauds.* Where husband and wife, on the request of another, convey land to the latter, to be by him conveyed to the wife, although without any express agreement that a trust shall be created, the law, by construction, will raise a trust in the grantee in favor of the wife, which a court of equity may enforce. In such case, the Statute of Frauds will not apply.

3. SUBROGATION—*discharging incumbrances—whether the right of subrogation will exist.* It is only when the payment of incumbrances is necessary to protect the rights of the payer, or when they are paid pursuant to an agreement with the debtor that the payer shall hold them as security for the money advanced, that the payer will be subrogated to the rights of the holders of such liens, and the liens will be kept alive for his benefit.

4. Where the demand of a creditor is paid with the money of a person not himself a creditor, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, the demand will be absolutely extinguished, and more especially so when the payment is made as a gift to the debtor.

5. LANDLORD AND TENANT—*lease by a trustee—in what relation the cestui que trust stands.* Where a mere naked trustee, with the consent of the *cestui que trust* having the beneficial title and right to the possession, leases the trust property, the leasing will be regarded as the act of the *cestui que trust,* and he will be entitled to whatever rights belong to the landlord.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

This was a bill in equity, by Quincy J. Cannon, and Ann Cannon, his wife, against the heirs-at-law of James G. White, deceased, to compel them to execute a trust by conveying to

Ann Cannon certain lands therein described. The substantial allegations are, that Quincy J. Cannon was the original owner of these lands, but he had become indebted, and liens had been put upon them to secure such indebtedness, to the amount of $6000. James G. White, a bachelor uncle of Ann Cannon, and much attached to her, desiring to secure a home for her, proposed to Quincy J. Cannon to pay off the indebtedness secured by liens on these lands, if he (Quincy J.) would convey his equity therein to his wife, the said Ann Cannon. Quincy J. accepted this proposal, and pursuant thereto conveyed to White, so that he might convey to Ann. White then paid off all the liens on the lands except a mortgage of $1200, and then returned to Maysville, Kentucky, where he resided, promising to convey to Ann soon after his arrival there; but without having made such conveyance, and soon after his return to Maysville, White was shot, and instantly killed. It is alleged, further, that the Cannons remained in possession of the lands after as before this agreement, and that White never claimed to own them. Answer was filed, denying the agreement as alleged, but admitting the advancing of money and the execution of the deed to White, and alleging that the transaction was a loan, secured by mortgage on the lands. The Statute of Frauds is also set up and relied upon. The administrators of White filed a cross-bill, alleging that the deed of Quincy J. Cannon was a mortgage to secure some $6000 loaned by White, and used by Cannon in paying off indebtedness, and praying for a decree of foreclosure. The Cannons reiterated the allegations of their original bill in answer to this cross-bill, alleging that the money advanced by White was a gift to Ann Cannon, and that White held the title in trust for her.

The court referred the cause to the master in chancery, to take proofs and report findings. The master reported his findings as follows:

"*First*—Complainants claim that J. G. White held said land in trust for Ann Cannon, and defendants, heirs of J. G. White,

in their answer, deny that such is the case, and a cross-bill is filed, stating that said $6000 was a loan, and that said deed be treated as a mortgage.

"*Second*—Quincy J. Cannon acquired title to this farm of one hundred and sixty-five acres many years ago, and he and his wife and son resided there and still reside there. The farm was mortgaged, and Ann Cannon negotiated with her uncle, Mr. White, to loan them $2000. White went to Morrison, Illinois, and on February 24, 1886, paid off $6000 of incumbrances on the farm. Quincy J. and his wife made White a deed of that date for the farm. White returned to Kentucky, and then made a lease of the premises. White was killed, the legal title to the farm being in him. Mr. White made up his mind, when he went to Morrison, to pay off the debts and give the farm to Ann Cannon for a home. He intended to have his lawyer make out a deed to Ann Cannon on his return to Kentucky.

"*Third*—When James G. White paid off the debts, he did it with the intention of giving same to Ann Cannon. He received the title in trust for the benefit of Ann Cannon, and not as a mortgage.

"*Fourth*—I find James G. White held title in trust for Ann Cannon, and she is entitled to a decree in conformity with prayer of bill, and that the cross-bill be dismissed."

Numerous exceptions were filed to this report, but disallowed by the master. On final hearing these were again renewed in the circuit court, and they were there also disallowed, and the court thereupon found the allegations of the bill to be true, and that complainants are entitled to the relief prayed for,—that the allegations of the cross-bill are not sustained, and he is not entitled to the relief prayed for. The $6000 was furnished to Ann Cannon as a gift to her. The deed to White was not to secure a loan, but White held said land in trust for Ann Cannon, and the real title was in Ann Cannon. It is decreed that the master in chancery shall, in forty days from the

date of this decree, make and deliver to Ann Cannon a deed of the premises described in the bill of complaint, (describes the one hundred and sixty-five acres first described herein,) and that the cross-bill of J. F. Barbour, administrator, be dismissed. A writ of error has been sued out of this court upon that decree, and numerous errors are assigned.

Mr. WILLIAM GARNETT, Jr., for the plaintiffs in error.

Mr. J. D. ANDREWS, and Mr. O. F. WOODRUFF, for the defendants in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

It can subserve no useful purpose to discuss the evidence in this record at length. It is sufficient to say that it has all been carefully read and considered, and that we concur in the conclusion reached, as to its effect, by the master in chancery and the circuit court. The facts, as found, do not establish a mere promise to make a gift of the money paid by White to extinguish the liens on the land, but an executed gift. The title having been conveyed by Quincy J. Cannon and Ann Cannon to James G. White at his instance and upon his solicitation, for him to convey to her, any payments of the liens thereon thereafter made by him must be regarded as pursuant to his previous promise to make a gift to her, and therefore they extinguished such liens, and were then an executed gift to her. His retention of the notes and mortgages thus paid off is of no consequence, for, having been paid, they were extinguished and valueless, save as proofs that they had been paid. It is only where the payment of incumbrances is necessary to protect rights of the payer, or where they are paid pursuant to an agreement with the debtor that the payer shall hold them as security for the money advanced, that the payer will be subrogated to the rights of the holders of such liens,

and the liens will be kept alive for his benefit. Where the demand of a creditor is paid with the money of a third person not himself a creditor, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, the demand is absolutely extinguished. (*Hough* v. *Etna Life Ins. Co.* 57 Ill. 318; *Small et al.* v. *Stagg*, 95 id. 39; *Pearce* v. *Bryant Coal Co.* 121 id. 597.) And, *a fortiori*, must the debt be extinguished and the lien discharged when the payment is made, as here, as a gift to the owner of the land upon which the debt is a lien. The retention of the possession of the evidences of indebtedness by White after their payment, is entirely consistent with the idea that their payment was a gift, for, furnishing, as they do, evidence of the fact of payment, they were very properly retained with the evidence of title which was still in him.

The evidence, it may be admitted, shows that the Cannons, when conferring with White in regard to their indebtedness and their desire for relief, did not expect a gift from him; but it also shows that he determined to make a gift to Ann Cannon, and that when the title was conveyed by Quincy J. Cannon and Ann Cannon to James G. White, it was at his request, and for the sole purpose, and pursuant to an agreement with him, that he should convey it to Ann Cannon. There was no express agreement that a trust should be created. It was not agreed that White should take and hold title for Ann Cannon for some definite time or purpose. It was simply, at his request, agreed that title should be conveyed, and it was thereupon conveyed, to him, that he might convey it to her,—and so the case is not affected by the statute. His duty to reconvey attached *eo instanti* the delivery of the deed to him. Having thus received the title upon his express request and pursuant to such contract, and died without having made the conveyance which he agreed he would make, the law, by construction, raises a trust in his heirs, to whom the legal title descended, in behalf of Ann Cannon. *Henschel* v. *Mamero*, 120 Ill. 660; *Allen et al.*

v. *Jackson,* 122 id. 567 ; *Wright* v. *Gay,* 101 id. 241 ; *Fischbeck* v. *Gross,* 112 id. 209.

The fact that White delayed conveying to Ann Cannon with her consent, can be of no consequence so long as no contract was made between them changing her rights. With her consent he executed a lease of a part of the land to her son; but since he had but the naked legal title, while the possession and right of possession were in her, his act, in leasing, is to be regarded as her act, and she was and is entitled therein to whatever rights belong to the landlord.

We find no cause to disturb the decree, and it is therefore affirmed.

*Decree affirmed.*