GEORGE INGRAM

*v.*

SAMUEL R. INGRAM.

*Opinion filed April 21, 1898.*

| | |
|---|---|
| 172 | 287 |
| 95a | ¹240 |
| 172 | 287 |
| 107a | ⁴ 81 |

1. CONVEYANCES—*grantee assuming mortgage is liable for deficiency upon foreclosure.* A grantee of land who assumes a mortgage thereon as part of the consideration is personally liable to the mortgagee for the mortgage debt, including any deficiency upon foreclosure.

2. SAME—*voluntary re-conveyance will not relieve grantee from payment of mortgage.* Voluntary re-conveyance of land by a father to his son will not relieve the father, or his estate after his death, from payment of a mortgage upon the land, which, as grantee in a previous conveyance by the son to the father, the latter had assumed.

3. SAME—*when grantee may charge grantor's estate with mortgage debt paid.* A son, who is grantee in a voluntary re-conveyance of land by his father, on which land the father, as grantee in a former deed between the same parties, had assumed a mortgage as part

consideration, may, after such father's death, on the executor's refusal to pay the mortgage debt, pay the debt and charge the estate.

4. EXECUTORS AND ADMINISTRATORS—*when one secondarily liable for debt may charge it upon estate.* One who, with his land, is secondarily liable for a debt primarily due from an estate, may, if the claim-holder does not file the claim against the estate, himself obtain an order charging such claim upon the estate, though he has not at the time paid it.

*Ingram* v. *Ingram,* 71 Ill. App. 497, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

HENRY MAYO, for appellant.

SNOW & HINEBAUGH, for appellee.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

On February 3, 1894, Samuel R. Ingram owned a farm of 107 acres in Groveland township, LaSalle county, Illinois, upon which was a mortgage executed by Ingram and wife to Louis J. Hodge, made in March, 1892, to secure a note of Ingram for the sum of $6000, with interest at seven per cent per annum, payable five years from date, on which note the interest for 1893 had not been paid. Ingram was also indebted to his father, Seth Ingram, on a note dated October 22, 1892, due one year after date, for the sum of $3500, with interest at six per cent per annum. On February 3, 1894, Samuel sold and conveyed his farm to his father, Seth Ingram, for the sum of $10,700, and executed to him a warranty deed. The consideration was made up of the Hodge note, principal and interest, and all notes and accounts held by Seth against Samuel Ingram. The warranty deed made by Samuel to Seth Ingram contained this provision: "This deed is made subject to a certain mortgage made in 1892, wherein Louis

J. Hodge is mortgagee, for the sum of $6000, at seven per per cent interest, said sum being due in five years after date and being part of said consideration." At the same time the parties executed a separate written agreement, wherein it was recited that Samuel Ingram has sold to Seth Ingram 107 acres, more or less, for $100 per acre, that Seth was to assume the mortgage for $6000 given to Louis J. Hodge, and that for the remainder of said payment Seth was to turn over the notes and accounts he held against Samuel in full to date. The agreement then described the land, and contained a stipulation by which Seth agreed to pay the interest on the $6000 mortgage for 1893. The principal sum of this assumed mortgage, and the note surrendered, amounted to $9500. The back interest of said notes made near the total sum of $10,700 stated as the consideration in the deed, and the written agreement indicates there were other notes and accounts held by the father against Samuel, which were to complete the consideration named in the deed. On the same day on which the deed and contract above mentioned were made, Seth Ingram executed a receipt to Samuel Ingram for all moneys and accounts in full to date, and on the same day a lease was executed, signed by Seth and Samuel Ingram, by which the lands described in the deed were leased to Samuel for five years, beginning March 1, 1894, and ending March 1, 1899. Samuel agreed to deliver two-fifths of the corn and oats, and to pay $50 a year for the grass land, orchard, garden and building. On the 30th of November, 1894, Seth made a voluntary conveyance for the consideration of one dollar, by which he conveyed and warranted to Samuel the 107 acres which had theretofore been conveyed to him by Samuel, which deed contained this stipulation: "Reserving, however, the coal underlying said real estate, with the right to mine and remove the same; and also reserving the use and possession of said real estate to myself, and my estate in case of my death, for a period of five years from date, and so

long thereafter as I shall live." This deed was duly delivered.

Seth Ingram died testate June 12, 1895, leaving surviving several children, among whom are appellant and appellee. Samuel Ingram filed a petition in the probate court of LaSalle county, praying that the executor be ordered to pay the mortgage debts which it was alleged the deceased, Seth Ingram, assumed in his lifetime, and to refund to the petitioner all the interest he had paid thereon. The parties in interest, including the holders of the mortgage debts, were made defendants to the proceeding and duly summoned. George Ingram and others answered. There was a hearing, and an order directing said executor to pay the Hodge mortgage and to refund to the petitioner interest paid by him thereon, which was the sum of $420, being the interest on the Hodge mortgage to March 28, 1896. George Ingram appealed to the circuit court, where, on a hearing, a like order was entered, from which he prosecuted an appeal to the Appellate Court for the Second District, where the judgment of the circuit court was affirmed. An appeal is prosecuted to this court, and two questions are presented: First, what obligation did Seth Ingram assume as to Samuel Ingram, with reference to paying this mortgage, by virtue of the deed and contract of February 3, 1894; and, second, what was the legal effect of the re-conveyance of the land in question by the voluntary deed made November 30, 1894, upon the mutual obligation of the parties already entered into by virtue of the deed and contract of February 3, 1894.

The contract that was entered into by Seth Ingram with Samuel Ingram on February 3, 1894, provided for the assumption of the Hodge mortgage, with the interest then due, as a part consideration of the conveyance of the 107 acres of land by Samuel to Seth Ingram, which conveyance, made by warranty deed, also provided for the assumption of the debt, stating the same as a part

of the consideration. It is a rule of law in this State, that where a grantee in a deed conveying lands upon which there is a mortgage securing an indebtedness, assumes and agrees to pay that mortgage debt as a part of the consideration for which the lands are conveyed to him, he thereby becomes personally liable to the mortgagee for the payment of the debt, and is liable for any deficiency upon foreclosure of the mortgage and sale of the premises, or may be sued at law by the mortgagee. His liability by such assumption is the same as if it were his individual debt, and a remedy may be had against him for the collection of the same. (*Dean* v. *Walker*, 107 Ill. 540; *Daub* v. *Englebach*, 109 id. 267; *Bay* v. *Williams*, 112 id. 91; *Schmidt* v. *Glade*, 126 id. 485; *Fish* v. *Glover*, 154 id. 86.) By the conveyance and contract the liability of Seth Ingram for the amount of the mortgage debt, with interest thereon, was absolutely fixed and determined, and that liability existed for the benefit of Samuel Ingram, who had originally executed the mortgage, and also in the interest of Hodge, the mortgagee, who had a right to enforce the mortgage as against Seth Ingram. By his death his estate became liable to pay the same, and had Samuel Ingram paid the mortgage debt he would have a claim against the estate of his father to recover the same.

It is insisted, however, that by the execution of the deed on November 30, 1894, which was a voluntary conveyance, the relations of the parties to the contract of February 3, 1894, were changed, and that the mortgage attached to the land alone, and the liability existed against Samuel Ingram for the payment of the debt. The evidence shows that at the time of the execution of the deed of November 30 Seth Ingram executed other deeds conveying to other children and grandchildren real estate, with a like reservation in those deeds as that contained in the deed to Samuel Ingram. He recognized the $6000 mortgage to Hodge as an indebtedness of his own,—and

this, at the time of the execution of the deed. Nothing in the deed executed on November 30, 1894, released the grantor from the liability which he incurred by the contract and assumption of the indebtedness existing by reason of the Hodge mortgage. To hold that he or his estate was released from the payment of that mortgage by the conveyance made to Samuel Ingram would annul a contract entered into between Samuel and Seth Ingram, without any provision in the deed providing for such annulment.

It was shown by the petition that the executor of Seth Ingram had refused to pay the annual interest on the $6000 mortgage, and on March 19, 1896, Samuel Ingram paid the same,—$420. Inasmuch as the estate was liable for this money by reason of the contract between Seth and Samuel Ingram and the covenant in the deed, and the holder of the note and mortgage was not bound to prove his claim against the estate, but might proceed against the land by foreclosure or proceeding at law against Samuel Ingram, Samuel Ingram was not a mere volunteer in paying that sum, and had a right to look to the estate and recover the same after he had paid it. The holder of the mortgage, the executor and all the heirs were in court, and the court could, by an adjudication binding on all the parties, have directed the payment of the Hodge claim by the administrator and directed the payment of the sum paid by Samuel Ingram on the interest. In the administration of estates equitable rules prevail.

The judgments of the Appellate and circuit courts were proper. The affirmance of the circuit court's judgment by the Appellate Court for the Second District was not error, and that judgment of said Appellate Court is affirmed.          *Judgment affirmed.*