Poole v. Kelsey.

## Charles F. Poole v. James E. Kelsey.

1. FREEHOLD — *Where Not Involved.*—A suit where the issue is whether a certain tract of land conveyed to a party was subject to the lien of a mortgage, does not involve a freehold.

2. SAME—*In Suits to Foreclose Mortgages.*—Bills to foreclose mortgages, or to establish other liens upon lands, do not ordinarily involve freeholds, for the defendant may, in such cases, by the payment of the money necessary to discharge the liens, prevent the decree being executed so as to divest him of his freehold, and usually the only question litigated is the existence of the lien, the title itself not being in issue.

3. APPELLATE COURT—*Where it Has Jurisdiction.*—Where the sole issue to be tried is whether a mortgage by the owner of real property to another party is kept alive by virtue of an agreement between such owner and a purchaser from him of the mortgaged property, as against a conveyance from such purchaser to a subsequent purchaser, a freehold is not involved, and the Appellate Court has jurisdiction to decide the issue.

4. PAYMENT — *When an Incumbrance is Discharged.*— When the demand of a creditor is paid with the money of a third person, not himself a creditor, without any agreement that the security shall be assigned or kept alive for the benefit of such third person, the demand is absolutely extinguished.

5. SAME—*What is, of a Mortgage Indebtedness.*—Where the vendor of real property, pursuant to an agreement between him and his vendee, pays off a note secured by a mortgage upon the property, and receives from the mortgagee a release, and the note, marked canceled, the mortgage, so far as anything such vendor might do, is completely extinguished.

6. SUBROGATION—*When it Does Not Exist.*—A purchaser of mortgaged premises can be subrogated only when he has not assumed the payment of the mortgage indebtedness as a part of the purchase money.

**Bill to Foreclose a Mortgage and for Subrogation.**—Appeal from the Circuit Court of Wabash County; the Hon. EDMUND D. YOUNG-BLOOD, Judge, presiding. Heard in this court at the August term, 1900. Reversed and bill dismissed. Opinion filed March 11, 1901.

**Statement.**—James E. Kelsey, appellee, filed his bill October 19, 1899, against George Wilkinson and Charles F. Poole, to foreclose a certain mortgage, and for subrogation.

The bill alleges, in substance, that Horace G. Blood borrowed $500 from the Ætna Life Insurance Company, for which he executed his note, dated January 18, 1882, payable January 1, 1887, at seven per cent interest from date, and that the said Blood and wife, to secure the payment of said note, mortgaged to said company the E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, Sec. 36, T. 2 N., R. 13 W., in Wabash county, containing eighty acres.

That on the 6th day of September, 1886, George Wilkinson, who had purchased the north half of said tract of land of Blood, subject to said mortgage, entered into a contract in writing with the complainant, James E. Kelsey, which contract, dated September 6, 1886, is set out in full in the bill, and is in substance as follows: That said Kelsey agreed with said George Wilkinson, who was then the owner of the north half of the tract mortgaged by Blood to the insurance company, that he, Kelsey, would purchase the Blood note and mortgage from the insurance company; and that in consideration of said purchase, said George Wilkinson would execute to said Kelsey his note in an amount equal to what was due at that date on the Blood note; said note to be due in four years, bearing interest at eight per cent, payable annually; and that the mortgage to the insurance company should stand as binding as a first lien upon said north half until the Wilkinson note to Kelsey was paid.

This agreement was signed under seal by Kelsey and Wilkinson.

That about the 14th day of December, 1887, in pursuance of said agreement, complainant paid said insurance company $569.60, being the amount due on the Blood note; and

that on the 20th of December, 1887, in compliance with said agreement, the Ætna Life Insurance Company note and mortgage having been delivered to the complainant, the said George Wilkinson made to the complainant his note of that date, in lieu of the Blood note, in the sum of $569.60, due on the 20th day of December, 1891, with eight per cent interest, payable annually.

The bill alleges that in pursuance of said agreement the said Wilkinson note is secured to be paid by the said mortgage to the Ætna Life Insurance Company as to the north half of the said tract described in the said mortgage, and that complainant Kelsey is entitled to be subrogated to the rights of the Ætna Life Insurance Company under said mortgage, and to have said real estate sold for the payment of the Wilkinson note. The bill concludes with the usual prayer in cases of foreclosure of mortgages and waives answer under oath.

George Wilkinson made default, and Poole, appellant, answered.

The answer denies that appellee bought the Blood note, and avers that appellee paid said note to the insurance company, and said company discharged the mortgage, in pursuance of an agreement made by appellee with Blood, and as a part of the purchase price of the south half of said mortgaged tract which appellee bought from Blood; avers that by virtue of this payment said mortgage ceased to be a lien upon any part of said tract.

Appellant pleads the statute of limitation and charges that appellee and George Wilkinson fraudulently conspired in making their contract set up in the bill, in order to defeat Wilkinson's creditors.

Appellant avers that said agreement was not recorded and was unknown to appellant until the commencement of this suit and denies that the said north half is in any way subject to the payment of the Wilkinson note to appellee. He also avers that a note and mortgage on said north half, made by George Wilkinson to Susan Poole, to secure money borrowed, was a first lien, and that a deed was made to

appellant, as her distributee, by George Wilkinson, in pay-ment of said note, and avers that neither Susan Poole nor her agent, when making said loan and taking said mort-gage, had any notice, actual or constructive, of the agree-ment between said appellee and George Wilkinson; and avers that appellant, when taking his deed for said north half, in payment of said loan, had no notice, actual or con-structive, of said agreement between appellee and George Wilkinson. The answer concludes:

" And this defendant, in fact and in truth, is the owner of the north half of the east half, northwest quarter, sec-tion 36, town 2 north, range 13 west, and that he loaned the said $650 in good faith, without notice of any of the supposed equities of the cause."

Replication was filed and the cause was heard upon the bill, answer of Poole and replication; and upon depositions, exhibits and oral evidence; and a decree was rendered in substantial conformity to the prayer of the bill. The court finds in the decree that the equities are with the complain-ant; that the amount due on the Wilkinson note is $902.30, and that the complainant is entitled to be subrogated to the rights of the Ætna Life Insurance Company under the mortgage, and orders sale, etc.

LEEDS & RAMSEY and S. R. PUTNAM, attorneys for appel-lant.

E. B. GREEN and THEO. G. RISLEY, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Appellee urges that a freehold is involved, basing his claim upon the allegation of ownership in the concluding lines of appellant's answer, and that this court has, there-fore, no jurisdiction. This claim is not well founded. The title of appellant is not disputed. The issue is whether or not the north half deeded to him by George Wilkinson is subject to the lien of the Ætna mortgage. This issue does not involve a freehold.

"It is the rule that bills to foreclose mortgages, or to establish other liens upon lands, do not ordinarily involve freeholds, because the defendant may, in such cases, by the payment of the money necessary to discharge the liens, prevent the decree being executed so as to divest him of his freehold, and usually the only question litigated is the existence of the lien, the title itself not being in issue."

In the case at bar, the Blood title, in the first instance, to the north half in controversy, is not disputed, neither is the conveyance from Blood to George Wilkinson, nor the conveyance from George Wilkinson to appellant. The sole issue, then, is whether the mortgage to the insurance company, by virtue of the agreement between appellee and George Wilkinson, is kept alive as a lien on said north half, as against the deed from George Wilkinson to appellant. This court has jurisdiction to decide that issue.

The evidence in the case discloses these facts:

January 18, 1882, Blood borrowed $500 from the Ætna Life Insurance Company, giving his note therefor, due January 1, 1887, at seven per cent interest, payable annually, and secured by mortgage on the east $\frac{1}{2}$, N. W. $\frac{1}{4}$, Sec. 36, T. 2 N., R. 13 W. This note, marked canceled, amounting to $529.15, was paid November 1, 1887, by appellee to Oliver J. Bailey, agent of the insurance company, and the note and a release of the mortgage forwarded to appellee. Bailey testifies:

"Said mortgage was paid in full. A release of said mortgage was duly executed by the Ætna Life Insurance Company, and under date of December 16, 1887, together with all the papers in the loan (note, mortgage and abstract of title) was forwarded to James E. Kelsey. I had no knowledge at the time of the payment of such loan that anything was intended by such payment other than the full and complete satisfaction of said mortgage. Said note and mortgage was never sold or assigned by said insurance company, or by any one for it."

January 3, 1886, Blood and wife, by warranty deed, conveyed the north half of the tract mortgaged to the insurance company to Robert T. Wilkinson and George Wilkinson. This deed contained no reference to the Blood mortgage to the insurance company.

February 6, 1888, Robert T. Wilkinson and wife quit-claimed their interest in said tract to George Wilkinson, he thereby becoming sole owner of said mortgaged north half.

September 6, 1886, Blood and wife, by warranty deed, conveyed the south half of the mortgaged tract to Kelsey, appellee, subject to the mortgage to the insurance company. The deed contains this clause:

" Provided, however, that said warranty is subject to a mortgage of $500, due January 1, 1887, said mortgage given by the grantors in this indenture to the Ætna Life Insurance Company."

The testimony of Blood shows that appellee Kelsey, as part of the purchase price for said south half, agreed to pay the Blood note to the insurance company. Blood testified:

" I conveyed the south half of the eighty acres to Kelsey (appellee) for a mill. Do not recollect exact consideration, but traded it with the $500 mortgage on it. This mortgage was due the Ætna Life Insurance Company. The payment of that mortgage by Kelsey was part of the consideration. I paid enough in the mill trade to satisfy mortgage. I had deeded north half to the Wilkinsons, and gave them mortgage on the south half to secure payment of Ætna Insurance Company on north half. Gave warranty deed for north half to Wilkinsons and I to pay incumbrance."

Appellee Kelsey, in his cross-examination, confirms this evidence of Blood as follows:

Q. If I understand you correctly, you had assumed to pay off the $500 mortgage in the deal with Mr. Blood? A. Yes, sir.

The witness further testifies that he expected to get the money from George Wilkinson to pay the insurance company mortgage; that he expected to pay the loan off myself, George owing me $500; I expected to use that to pay it off with. Kelsey then, in paying the Blood note to the insurance company, did only what he agreed to do, as part of the purchase price of the south half.

When the insurance notes for principal and interest, with the release, were sent by Bailey to appellee, they were

marked canceled.   The payment of these by appellees, as stated *supra*, was on November 1, 1887.

On September 6, 1886, being the same date as the deed from Blood and wife for the south half to appellee, the contract between appellee and George Wilkinson was entered into, upon which appellee bases his claim for subrogation.

This contract was an agreement by appellee to purchase the Blood note from the insurance company, and to hold the mortgage securing it to the company as a mortgage upon the north half of the tract described in it, to secure a note to be given appellee by said Wilkinsons, equal in amount to what was due on the Blood note, treating that note at that time as unpaid.

This note George Wilkinson executed to appellee, dated December 20, 1887, for $569.90, and it is the note sought to be collected in this proceeding.

This agreement between appellee and George Wilkinson was not recorded.   It was an attempt by these parties to keep alive, for their own purposes, an incumbrance on the north half of the property mortgaged to the insurance company, securing Blood's $500 note, which note appellee had agreed with Blood to pay as a part of the purchase price to Blood, when appellee bought the said south half from him. That this incumbrance could not be so treated and continued by appellee and George Wilkinson is too clear for controversy.   When appellee, pursuant to his agreement, paid the Blood note to the insurance company, November 1, 1887, and received it, marked canceled, and a release of the mortgage, the mortgage, so far as anything he might do, was as completely extinguished as if the release had been recorded. He had only done what he had agreed to do, as part of the purchase price of the south half.   White v. Cannon, 125 Ill. 412.

Blood had given a warranty deed to the north half.   He was interested as the maker of the note to the insurance company, in having it paid, and also as a warrantor of the title to the north half.   Appellee was not a surety for Blood upon the insurance note so as to give him any claim

or control of the mortgage securing the payment of that note by him. By his agreement with Blood, he promised to pay this note, not as surety, but as part of the consideration Blood was to receive from him for the south half sold to him. He could have been sued for it by the insurance company. Ingram v. Ingram, 172 Ill. 287.

There is, then, no subrogation in equity of the Blood mortgage to secure the George Wilkinson note made to appellee. Martin v. Martin, 164 Ill. 648; Suppiger v. Garrels, 20 Ill. App. 625.

There could be no contractual subrogation without the agreement or consent of Blood, who was interested in having his note paid and in having the title to the north half cleared, for which he had given a warranty deed.

" When the demand of a creditor is paid with the money of a third person, not himself a creditor, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, the demand is absolutely extinguished." Hough v. Ætna Life Ins. Co., 57 Ill. 318; Small. v. Stagg, 95 Ill. 39; Pearce v. Bryant Coal Co., 121 Ill. 597; White v. Cannon, 125 Ill. 416.

When the debt is extinguished without any agreement on the part of the debtor to keep alive the mortgage securing it, the mortgage is also extinguished.

As there is no claim that Blood ever agreed that his mortgage to the insurance company should be continued or kept alive to secure the Wilkinsons' note to appellee, it is clear that there is no contract by subrogation.

The evidence shows that on February 8, 1888, a note was given by George Wilkinson for $650 to Susan Poole, for borrowed money, and secured by mortgage on said north half in controversy. This loan was made by Robert T. Wilkinson, as agent for Susan Poole, who lived in New York. Subsequently she died, and appellant Charles F. Poole, as one of the distributees of her estate, became the owner of said note and mortgage. On April 7, 1898, George Wilkinson and wife deeded said north half to appellant, in satisfaction of said note and mortgage to Susan

Poole.  Robert T. Wilkinson testifies that he was the agent of Susan Poole, and made the loan to George Wilkinson for her; that he was also a local agent for the Ætna Life Insurance Company; that he knew when he made the loan that Kelsey had paid the Blood note; that he was notified by the insurance company that he had; that he had no knowledge of any contract between George Wilkinson and appellee, or of any lien against said north half.

Charles F. Poole testified that he took deed from George Wilkinson and wife, dated April 8, 1898, in satisfaction of the $650 and interest borrowed from Susan Poole, who died in 1891; that he had no notice of any contract or indebtedness between appellee and George Wilkinson, and had no notice of any unreleased mortgage to the Ætna Life Insurance Company; that Robert T. Wilkinson was his agent at Mt. Carmel in transacting the business.

From these facts we find that the Ætna Life Insurance Company's mortgage was released by the payment of the Blood note by appellee November 1, 1887; that the unrecorded agreement between appellee and George Wilkinson did not extend or keep alive said mortgage upon the said north half included in said mortgage, and that appellant takes title to said north half of the east half of N. W. ¼ Sec. 36, T. 2 N., R. 13 W., free of the lien of the mortgage to said insurance company.

The judgment of the Circuit Court is therefore reversed and complainant's bill dismissed for want of equity, at his costs.