### CARAWAY v. FOWLER et al. (No. 603—4088.)

(Commission of Appeals of Texas, Section A. Dec. 20, 1924.)

1. **Principal and surety** ⟞115(2)—**Vendor and purchaser** ⟞265(3)—**Purchaser, assuming vendor's lien notes, held primarily liable, and could not change liability by reconveyance; purchaser held not discharged.**

Where vendee, giving vendor's lien notes, sold to purchaser who assumed notes, and holder of notes made demands on purchaser for payment, he thereby accepted purchaser as principal obligor, and purchaser became primarily liable and could not by reconveyance change his liability to that of surety without special agreement with holder and was not discharged because holder, in transferring part

of notes, gave them priority over those retained.

**2. Appeal and error ⟨key⟩1175(6)—Where facts are fixed by written instruments which would be unchanged by retrial, Supreme Court will reverse and render judgment.**

Where substantial facts touching issues are fixed by written instruments which would not be changed by retrial, on reversal of judgment by Supreme Court, judgment will be rendered for proper party.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Odos Caraway against U. T. Fowler and another. Judgment against defendant Fowler, but in favor of defendant J. T. Warren, was affirmed by the Court of Civil Appeals (255 S. W. 995), and plaintiff brings error. Judgment, in so far as it released defendant Warren, reversed and rendered; otherwise, affirmed.

Cole & Simpson, of Clarendon, for plaintiff in error.

Underwood, Jackson & Johnson, of Amarillo, for defendants in error.

CHAPMAN, J. On November 24, 1918, one Hamm sold to Fowler certain land in Donley county, and, as a part of the consideration, Fowler executed in favor of Hamm 9 vendor's lien notes. Note No. 1 was for $700, and each of the others for $500, payable one each year for 9 consecutive years, beginning with January 1, 1920. On March 31, 1919, Fowler sold the land to Warren, who, as a part of the consideration, assumed the payment of the 9 notes above mentioned. On April 17, 1919, Hamm sold and transferred the 9 notes to Caraway. On December 29, 1920, Warren resold the land to Fowler, and, as a part of the consideration, Fowler assumed the payment of 8 of the notes mentioned herein, note No. 1 having been paid to Hamm by Warren and Fowler while Warren still owned the land. Fowler obtained a loan from one Darlington for $1,500, and executed to Darlington a note for that amount due December 15, 1925, and executed to Darlington a deed of trust on the land to secure the payment of said note, it being stated in the deed of trust that the $1,500 note was for money furnished to Fowler by Darlington for the taking up and extending of the last 3 of the $500 vendor's lien notes above mentioned, and which were due on January 1, of 1926, 1927, and 1928. This deed of trust was recorded January 28, 1921, and on that date Caraway transferred to Darlington the three notes mentioned in said deed of trust, and in the transfer provided that said 3 notes are the first and superior lien to the other notes existing against the land, and on each of the five notes retained by Caraway there was noted "This note is second and inf. to notes 7, 8, and 9, of this series. Odos Caraway." Default was made in the payment of the notes retained by Caraway, and he brought suit against Fowler and Warren and for a foreclosure of his lien subject to the lien held by Darlington. In the trial court Caraway obtained a judgment foreclosing his lien and a personal judgment against Fowler, but a personal judgment against Warren was refused. This judgment was affirmed by the Amarillo Court of Civil Appeals (255 S. W. 995) on the ground that when Warren reconveyed the land to Fowler, Fowler then became the principal obligor to Caraway for the debt and Warren his surety, and that the act of Caraway in making the 3 notes transferred by him to Darlington a first lien on the land released Warren as such surety. This holding of the Court of Civil Appeals is now before us for review. The precise question as to whether Warren, under the circumstances, would be a principal obligor to Caraway or would only be a surety to him for Fowler was before the Supreme Court of Texas in the case of Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672. The facts in that case show that some time prior to 1905 one Horstman sold to B. S. McLeary certain land, and, as a part of the consideration, McLeary assumed the payment of an outstanding note for $690 held by Hoeldtke. In October, 1906, McLeary sold the same land to Hill, in which Hill assumed the $690 note owned by Hoeldtke. On July 11, 1907, Hill reconveyed the land to McLeary, and, as a part of the consideration, McLeary assumed the payment of the $690 note. Hoeldtke brought suit against McLeary and Hill, seeking recovery on the promissory note and a foreclosure of his vendor's lien note. The case was submitted to a jury upon special issues, and they found that Hoeldtke accepted the promise of Hill to pay the note held by him as shown by McLeary's deed to Hill; that Hill did not know of this acceptance prior to the time when Hill reconveyed the land to McLeary. There were other findings not necessary here to mention. Upon these findings the court rendered personal judgment in favor of Hoeldtke and another, and ordered foreclosure of the lien, but discharged Hill from any personal liability for any of the obligations assumed by him in the trade with McLeary. In discussing the refusal of the court to render a personal judgment against Hill, the Supreme Court, speaking through Justice Dibrell, made these observations:

"The plaintiff accepted the promise of Hill to pay said note, although Hill seems to have had no notice of this acceptance. When these facts concurred, the obligation of Hill to pay plaintiff his note was as binding as if Hill had executed and delivered plaintiff his written obligation promising to pay same, and could no more be revoked by any subsequent agreement

between Hill and McLeary without the consent of plaintiff than could any other obligation of Hill be revoked independent of the assent of the payee whose rights had been established by the concurrence of a promise to pay, a moving consideration and an acceptance of such obligation. The relation thus established is purely contractual. McLeary was indebted to Hoeldtke upon the note he had assumed, and Hill was indebted to McLeary in a like sum as a part consideration for the land, and in obligating himself to pay Hoeldtke he was not obligating himself to pay a debt he owed to McLeary, but to McLeary's creditor, Hoeldtke, and, when Hoeldtke agreed with McLeary to accept Hill's promise, Hill became the principal debtor to Hoeldtke and McLeary surety for the debt. This arrangement embraced all the elements of a binding contract. There was a valuable consideration and mutuality of obligation.' Hill was no longer a debtor of McLeary, but of Hoeldtke. McLeary had no cause of action against Hill, except in the event that Hill failed to pay Hoeldtke, and then only upon the principle that the surety may recover from the debtor whose debt he has been compelled to pay. * * * The theory that the assumption of the debt of the grantor's creditor by the grantee is nothing more than an agreement of indemnity against the mortgage debt and may be revoked by a reconveyance of the land does not seem to have ever been recognized by any ruling of any court in this state that we are aware of. We doubt if such a rule obtains in any jurisdiction in the United States, where the creditor has accepted the substituted obligor as in this case. * * *

"Judge Hodges, in speaking for the majority of the Court of Civil Appeals in this case, has so ably and elaborately presented the issues that we desire to quote from his opinion at some length as expressive of our views, as follows: 'So far as our investigation has been extended, all of the cases where this question has been involved concede that the promise of the grantee becomes irrevocable when the mortgagee has in some manner acted upon it, with the exception of two, one in California, and the other in New Jersey. Biddell v. Brizzolara, 64 Cal. 354 (30 Pac. 609); Laings v. Byrne, 34 N. J. Eq. 52. These, however, have become so isolated by the subsequent trend of American adjudication that they may now be regarded as being without weight as judicial authority upon this question. Certainly it may be said that they are at present almost, if not entirely, alone in espousing the doctrine which distinguishes them from the great body of juridical opinions. In those cases where it is held if the mortgagee has in some manner acted upon the promise of the grantee that the liability of the latter becomes fixed, it is not claimed that this action must be such as would create an estoppel against the grantee. It seems to be sufficient if it is such as to evince an acceptance or an adoption of the promise by the mortgagee. If this be the true view, then it follows irresistibly that the grantee cannot thereafter relieve himself of his assumed obligation without the consent of the creditor whose assent fixed his status. This would seem to be in accord with the general principles governing the right of contracting parties. When Hill purchased this land from McLeary, he, in effect, held back that portion of the con-

sideration which was due to Hoeldtke and Leach from the purchase price. This he undertook to pay to them, or to the holders of the notes, not to benefit McLeary, but in order to discharge an incumbrance against the property which he had purchased, and as a part of the consideration. We do not think it was essential in order to fix the liability of Hill that he should have received actual notice of the plaintiffs' assent to or acceptance of his promise made for their benefit. When he accepted the deed from McLeary, containing the recitation of his assumption of those outstanding obligations, it was an unconditional promise upon his part to pay those notes according to their terms. It was not a mere offer by him to make a contract, but an absolute contractual undertaking.'"

In the case of Spann v. Cochran & Ewing, 63 Tex. 240, Watson and Larue bought a printing press from Spann and executed chattel mortgage thereon to secure certain deferred payments. Cochran and Ewing bought Watson's interest, and, as a part of the consideration, assumed the payment of the debt originally made to Spann by Watson and Larue. In discussing the liability of Cochran and Ewing to Spann, Associate Justice Stayton wrote as follows:

"It is believed, however, that such an agreement between a debtor and a third person, made upon valuable consideration, gives to the creditor a cause of action on which he may sue and recover from the person who has so contracted to pay to him a debt originally due only by the person to whom the promise is made.

"This seems to be in accordance with the great weight of American authority. * * *

"We are of the opinion that, under the facts of this case, the action may be maintained against Cochran and Ewing, not only for the purpose of foreclosing the chattel mortgage, but also for the purpose of enforcing from them the payment of the debt due to Spann; and this as a personal obligation.

"The sum to be paid to the plaintiff is the sum which Cochran & Ewing agreed to pay for the property in addition to the sum or sums which they were to pay to Watson and to other persons holding claims assumed by the contract to which they were parties, which they accepted, and under which they took the property constituting the consideration for their promise.

"The sum to be paid constitutes in legal effect a debt due by Cochran & Ewing, which they have agreed to pay to Spann instead of Watson, from whom the consideration for the promise moved; and that such payment would discharge the debt of Watson does not render Cochran & Ewing the guarantors of the debt due by Watson, or render the sum which they are to pay any the less their debt."

In Allen v. Traylor et al. (Tex. Com. App.) 212 S. W. 945, the Rockport Land Company and others conveyed to McKey and Pridgen certain lands and in payment therefor the purchasers executed and delivered their vendor's lien notes payable to the order of the land company. The company transferred the

notes to Traylor. McKey and Pridgen conveyed the land to M. Ucovich, subject to the vendor's lien. Thereafter Ucovich conveyed part of the land to Frank Allen, who, as a part of the consideration therefor, assumed the payment of a certain part of the vendor's lien indebtedness against the land. Traylor brought suit against Allen and McKey and Pridgen, to recover a balance due on the notes. Allen's immediate vendor, Ucovich, who purchased the property subject to, but not assuming the payment of, the vendor's lien, was not made a party to the suit. The Commission of Appeals, in an opinion by Presiding Judge Sonfield, held that Hill was liable for the amount of the debt assumed by him, notwithstanding his immediate vendor did not assume the payment of the debt, and in the opinion used the following language:

"It is well settled in this state, and held with practical unanimity in the various states, that a grantee, assuming payment of a mortgage or lien indebtedness, for which his grantor is personally liable, thereby becomes liable to, and can be sued thereon by, the holder and owner of such indebtedness. * * *

"In a majority of the states, however, the liability of the grantee is held contractual in its nature. It is based upon the broad and well-settled principle, supported by the overwhelming weight of authority in the courts of this country, that where one person for a valuable consideration makes a promise to the person from whom the consideration moves for the benefit of a third person, such third person may maintain an action thereon."

In Ingram v. Ingram, 172 Ill. 287, 50 N. E. 198, Samuel R. Ingram owned a farm on which there was an indebtedness of $6,000 secured by a mortgage. Samuel R. Ingram was also indebted to his father, and conveyed the land to his father and the father assumed the payment of the $6,000. Afterwards the father reconveyed the land to Samuel R. Ingram, but in this conveyance payment of the $6,000 was not assumed. It was held that the estate of the father of Samuel R. Ingram was liable for the $6,000 indebtedness, and the phase of the law under consideration discussed in these words:

"It is a rule of law in this state that where a grantee in a deed, conveying lands upon which there is a mortgage securing an indebtedness, assumes and agrees to pay that mortgage debt as a part of the consideration for which the lands are conveyed to him, he thereby becomes personally liable to the mortgagee for the payment of the debt, and is liable for any deficiency upon foreclosure of the mortgage and sale of the premises, or may be sued at law by the mortgagee. His liability by such assumption is the same as if it were his individual debt, and a remedy may be had against him for the collection of the same."

[1] We have read all the cases cited in the briefs of both parties, but in our opinion the cases above cited so clearly state the law applicable to this case that the citation of other authorities is not necessary. During the time that Warren owned the land that he purchased from Fowler, Caraway made demands on him for payment of the principal and interest then due on the notes, of which Warren assumed the payment, and Caraway also made demand upon Warren for the payment of these amounts after Warren had reconveyed the land to Fowler, and this clearly shows that during the time Warren owned the land Caraway accepted him as a principal obligor for the payment of the notes held by Caraway. Under the holding of our Supreme Court in the Hill Case above mentioned, when Caraway accepted the promise of Warren to pay his notes, the obligation of Warren to pay Caraway was as binding as if Warren had executed and delivered to Caraway his written obligation promising to pay same, and under the holdings in the cases herein discussed we cannot agree with the Court of Civil Appeals that when Warren reconveyed the land to Fowler, Warren was then only a surety to Caraway for Fowler as to the notes held by Caraway, but in our opinion Warren, having once become primarily liable to Caraway for the payment of the notes assumed by him, when the land was conveyed to him, that then he could not, through any act of his and Fowler's, change his liability for the payment of the notes from a principal obligor to that of surety, without the express agreement of Caraway. All that Caraway did with reference to the loan secured by Fowler from Darlington was to transfer to Darlington the last 3 of the series of notes and provide that the lien held by Darlington to secure the payment should be superior to the lien to secure the payment of the notes retained by him, and to make such notation on the notes that he retained. It certainly would not be maintained that it was the duty of Caraway to protect Warren's interest, that he retain in his possession all of the 8 notes or that he could not sell one without selling all to the same party, and whenever, as we understand the law, Caraway sold any of the notes to outside parties and retained others of the notes, that the parties to whom he sold such notes would be entitled to have the funds derived from the lien under a foreclosure sale applied first to the payment of their notes. Under these conditions we cannot see how the mere execution of an instrument by Caraway, stipulating that the parties to whom he sold 3 of the notes should have the rights that they would have regardless of the execution of such instrument, could in any way affect the rights of Warren. We think that Warren was personally liable for the payment of the notes sued on, and that such judgment should have been rendered by the trial court.

[2] It appearing that the substantial facts touching the issue that we have had under

consideration are fixed by written instruments, about which there can be no controversy, and that another trial could not change such facts. We recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and in so far as the same released the defendant in error, J. T. Warren, from personal liability to plaintiff in error upon the note sued on, and that such judgment be here rendered for plaintiff in error Odos Caraway against the defendant in error J. T. Warren and that the judgment of the Court of Civil Appeals and of the district court granting plaintiff in error judgment against the defendant in error U. T. Fowler and for a foreclosure of the vendor's lien against the land in question be affirmed.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both reversed, in so far as they released the defendant in error J. T. Warren from personal liability, and judgment rendered against him for plaintiff in error on the note; in all other respects the judgments of both courts are affirmed.