**REED .v. SHAW et al.   (No. 2512.)**

(Court of Civil Appeals of Texas.   Amarillo.
June 3, 1925.   Rehearing Denied July 1,
1925.)

1. **Chattel   mortgages   ⊕═226—Mortgagors selling property could not, without consent of mortgagee, change liability to that of sureties.**

   Where makers of note given for price of property, who executed chattel mortgage thereon, afterwards sold it to one who assumed the debt, makers remained liable as such, and did not thereby become sureties, in absence of affirmative showing that owner of note unconditionally consented to such change of liability.

2. **Partnership  ⊕═241 — Partners as makers of notes and chattel mortgage, by selling and delivering property to partner, are bound by latter's negotiation as to release of mortgage.**

   In view of Vernon's Ann. Civ. St. Supp. 1922, art. 6001—60, where notes and chattel mortgage were executed by partners, partners, by thereafter selling property to one partner, constituted him their agent, and, in absence of fraud, were bound by his acts in negotiating with mortgagee for release of mortgage.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by J. F. Reed against G. W. Shaw and others. From a judgment against defendant named only, plaintiff appeals. Reversed and rendered.

Kay, Akin & Smedley, of Wichita Falls, for appellant.

C. M. McFarland, Harris & Martin, and Davenport, Cummings & Thornton, all of Wichita Falls, for appellees.

HALL, C. J.   The appellant, Reed, filed this suit against G. W. Shaw, John R. Chambers, Duane Meredith, C. V. Stodgel, and J. B. Morris, to recover upon certain promis-

sory notes executed by the defendants while they were doing business as partners under the firm name and style of Shaw-Chambers Drug Company.   Plaintiff alleges that a chattel mortgage was executed by the drug company on the drug store fixtures to secure the payment of said notes, and prays for judgment for the amount of his notes, including attorney's fees and for foreclosure.

The defendant Shaw did not answer. Chambers, Meredith, Stodgel, and Morris answered, alleging, in substance, that at the time the notes were executed and delivered to plaintiff a chattel mortgage was also executed and delivered to secure said notes, and which covered the fixtures described in the petition; that after the execution of the notes and mortgage, by a series of sales, they each disposed of their interest, in virtue of which Shaw became the owner of the entire property, including the fixtures, and as part consideration for said property had assumed the payment of the notes in question; that, during the pendency of this suit, and over the protest of these defendants, plaintiff released the chattel mortgage lien in order that the assignee of Shaw might dispose of the same; that said fixtures so released from the lien were worth more than the amount of the notes, including principal, interest and attorney's fees; that at the time of said release these defendants owned no interest in the property, and that the lien was released by plaintiff over the protest of defendants; that by reason of the facts alleged Shaw was the principal debtor, and these defendants were sureties, and as such, were released from liability by the act of plaintiff in releasing the mortgage lien and consenting that the assignee of Shaw might dispose of the property.

The case was tried before the court without a jury, and resulted in a judgment against Shaw for the amount of the notes. The court further decreed, however, that the plaintiff take nothing as against the other defendants. From this judgment, the plaintiff, Reed, appealed.

[1] The case is before us upon the following proposition:

"Where the makers of a note, given for the purchase price of property, and who executed a chattel mortgage on the same, afterwards sold the property to one who assumed the debt, such makers were not entitled to protection as sureties, but remain liable on the note as makers, in the absence of an affirmation showing that the owners of the note unconditionally accepted as the principal debtor the party who assumed the debt."

The trial court filed findings of fact and conclusions of law in which he found that, after the execution of the notes and mortgage by the partnership, the appellees sold their interest in the business and in the personal property covered by the chattel mort-

gage to G. W. Shaw; that thereafter Shaw made an assignment for the benefit of his creditors, after which the appellant, without the consent of the appellees and over their protest made to the assignee of Shaw, in consideration of $1,100, paid to appellant by the assignee of Shaw, released the chattel mortgage.

The assignee testified that he sold the property, and as to his efforts to sell it for a good price.

The attorney and agent of appellant testified that the chattel mortgage was released by the appellant in order that the fixtures could be sold by the assignee and a clear title to the same conveyed; that the assignee represented that the reason he wanted the lien released was that he might sell the property clear of the mortgage, and that appellant agreed to release it for that purpose, and had nothing further to do with the sale.

The appellees do not charge fraud or collusion on the part of appellant in connection with the transaction, but do charge, and the court so found, that over their protest made to the assignee of Shaw, the property was sold for $1,100. The court further found that the mortgaged. property at the time it was sold was of the reasonable market value of $2,500. The court further finds that the release of the mortgage made by appellant contains this recital:

"But it is distinctly understood that by these presents I am only releasing said mortgage, but that nothing herein is intended in any manner to release or in any way affect the balance of the indebtedness for the security of which said mortgage was given."

It seems that the court released the appellees from liability upon the ground, that he considered them sureties. In this we think the court erred. The appellees, being original makers and liable as principals with Shaw, could not by any agreement or act of theirs in connection with Shaw change their liability for the payment of the notes from principal obligors to that of sureties without the express consent of Reed. Their liability as principals continues until it is shown that Reed, for a consideration, has consented that such liability be changed to that of sureties. Wilson v. J. W. Crowdus Drug Co. (Tex. Civ. App.) 190 S. W. 194, 222 S. W. 223; Caraway v. Fowler (Tex. Com. App.) 267 S. W. 675; A. F. Shapleigh Hardware Co. v. Wells, 90 Tex. 110, 37 S. W. 411; White v. Boone, 71 Tex. 712, 12 S. W. 51; Abernathy, Rigby Co. v. McDougle, Cameron & Webster Co. (Tex. Civ. App.) 187 S. W. 503;

Watson v. Bank (Tex. Com. App.) 237 S. W. 1106; First State Bank & Trust Co. v. Davidson (Tex. Civ. App.) 260 S. W. 922, 8 C. J. p. 69, § 105.

[2] The record shows that the notes sued upon and the mortgage given to secure them were executed by Shaw and appellees as partners. By thereafter selling and delivering the property to Shaw, appellees placed it within his power to dispose of it as he thought best, and, by constituting him their agent to deal with the partnership property in the payment of partnership debts, and in the absence of fraud, they are bound by his acts. If appellees had remained as members of the firm, their right to consent that Reed release the mortgage cannot be doubted. Upon the retirement of appellees, Shaw, as the remaining representative of the partnership had the power to pay and compromise the firm debts and to dispose of firm property for that purpose. 2 Bates on Partnership, §§ 680, 686; Rowley's Modern Law of Partnership, § 593. The act of Shaw and his assignee in selling the property for less than its value is not chargeable to Reed, because he was dealing with a representative of appellees, and had the right to presume that the property would be sold for what it was worth and the proceeds properly applied. In asking that the mortgage be released and in thereafter selling it, Shaw must be held to be the agent of his comortgagors and not the representative of Reed. No protest was made to Reed against the sale by the assignee, nor would it have availed appellees anything if there had been. They were primarily and unconditionally liable jointly and severally with Shaw for the debt. 8 C. J. 65, 66. By executing the notes, they engaged to pay them as the comakers of Shaw in accordance with their, tenor. Vernon's Ann. Civ. St. Supp. 1922, art. 6001 —60. The notes were long past due and unpaid. The appellees were in default. When it appeared to them that Shaw and his assignee were about to waste the property and dissipate the security, they had the right, and moreover it was their legal duty, to pay the debt and be thereby subrogated to the right of appellant or to set up fraud and invoke the equitable power of the court to prevent the consummation of the sale, and they could even have had it rescinded, but they have resorted to none of these remedies.

For the reasons stated, the judgment is reversed, and here rendered in favor of appellant against appellees jointly and severally for the amount of his debt.