JOSEPH FRAZIER, Apellant, *v.* FREDERICK MILLER, Appellee.

### APPEAL FROM WABASH.

A. conveyed all his real and personal property to B., upon condition that B. should support and take care of A. and his wife, during their lives ; and B. gave a bond to that effect, which he subsequently obtained possession of, and withheld from A.   B. did not perform his obligation, but greatly maltreated A. and his wife.   *Held,* that A. might proceed in chancery to have the conveyance rescinded, and to obtain other relief upon a bill taken *pro confesso.*

THIS cause was heard before BAUGH, Judge, at August term, 1854, of Wabash Circuit Court.

C. H. CONSTABLE, H. B. MONTGOMERY and V. BELL, for Appellant.

A. KITCHELL, for Appellee.

SCATES, J.    Miller filed this bill against Frazier, praying the rescision of a contract entered into between the parties on the 15th of February, 1850, and the cancellation of a conveyance from him and wife to Frazier of that date, and the restoration of certain personal property of the value of one thousand

dollars. The court overruled a demurrer to the bill, and upon Frazier's declining to answer further, entered a decree canceling the deed, and for one thousand dollars.

The case made by the bill shows that the deed in fee was made of about seventy-three acres, and at the same time personal property of the value of one thousand dollars, consisting of horses, cattle, hogs, farming implements and household and kitchen furniture, provisions, groceries, &c., comprising the entire property and fortune of Miller, were delivered to Frazier, upon a contract with him for the support and maintenance of Miller and his wife during their natural lives. And to secure which, Frazier executed a bond to Miller, conditioned for a faithful performance of that agreement.

The bill further shows that Frazier contrived to get the bond into his own possession, and refuses to surrender it; that he wholly neglects, and fails to keep and perform the contract; neither providing sufficient food, clothing or lodging, nor providing for the comfort of Miller and wife, but, on the contrary, continually neglected to do so, and treated them with unkindness, harshness, using violent and abusive language towards them, and inflicting blows upon them, and so rendering it impossible for them to live with him. Was the court authorized upon confession of these facts, to enter the decree in this case ?

The objections to the bill on the demurrer are again urged here, and deserve due consideration. It is objected that the party has a remedy at law upon the bond for the recovery of damages for breaches, and therefore, upon a common, familiar principle, equity will not entertain jurisdiction or grant relief. Proceeding upon this view, it is supposed the bill is presented to the court of equity upon the ground that the party cannot sue at law, because of the loss of the bond, or its possession by defendant. And therefore it is objected that there is no affidavit of the loss accompanying the bill, as required in *Jaliaferro* v. *Foote*, 3 Leigh, 58 ; *Findley et al.* v. *Hinde and Wife*, 1 Pet. 244 ; Mitf. Eq. Pl. 135–146.

Another objection is, that the final decree was entered without proofs of the allegations of the bill. This objection is without foundation, as has been repeatedly held by this court.

The most important question in the case, arises upon the objection to relief in this court, because it is in the power of the party to sue upon the bond : and if he comes into equity upon the ground of its loss, or its custody and withholding it by defendant, he should accompany the bill with an affidavit of

that fact. A want of it entitles defendant to demur. Mitf. Eq. Pl. 135–146.

This ground of demurrer must depend upon the fact, whether this bill presents that ground of relief only. For if the plaintiff below is entitled to a rescision of the contract, and a cancellation of the deed, and a re-conveyance, no affidavit is necessary to the bill on this ground of relief, and so that objection falls. And we therefore address ourselves to the consideration of that question.

The general rule that equity will not grant relief in cases in which the party has a complete remedy at law, has its exceptions in cases of concurrent jurisdiction, as in fraud and some others ; and its qualifications.

The remedy at law must not only appear clear, and not doubtful or difficult, but the remedy there must be as complete and effectual as in equity. (Mitf. Pl. 146.) Damages only could be recovered at law upon this bond ; which would in effect amount to a sale of the property, and its conversion into money. Would that be an effectual and complete remedy in this case ? We clearly think not. The party disposed of all the property he had, except only his and his wife's wearing apparel, for the consideration, purpose and object of securing their maintenance, lodging, clothing and comfort, free from the cares of managing, providing and labor for life. So far from damages at law affording him a remedy, he would thereby be made to part with his farm, home, and the necessary means of a livelihood, and thrown again homeless upon the world, to care, labor and toil in providing another and different home, with all the necessaries of life. At an advanced age in life, this would become doubly onerous, inconvenient and oppressive. The bill is silent as to the ages of Miller and wife, and their constitutional vigor. But we might indulge a presumption, without violence, of their age and feebleness, from the nature and character of the transaction. Few, except the aged and feeble, ever give over the toils and cares of life by such disposition as this, of all they possess. Instead therefore of relieving the party from care, toil and labor, as was manifestly his intention, and providing a comfortable home and an easy old age, a simple money compensation at law would make him, involuntarily, by sale, strip himself of all he had provided to the same end, and with the same view and motive, and turn again to accumulated toil and labor. We cannot believe from the contract, Miller would ever have consented to such a disposition of his property as this would amount to. The court can give a more specific and effectual remedy by restoring to

him his land and home, with compensation for the personal property which Frazier refuses to restore.

I admit the case is new; almost of first impression. The only case I have been able to find is *Jenkins* v. *Jenkins*, 3 Monroe, 329. Jenkins and his wife being old, and having lost a favorite son who, with his wife, resided with him, executed a deed of his farm and homestead, together with all his household and kitchen furniture, to his son's wife and her daughter, to take effect at his death. The consideration was expressed and shown to be the natural love and affection he bore them, and also upon the consideration of her agreeing to remain in his family during his life, and to render such superintendence over his domestic affairs as she might deem proper and necessary, and for the benefit of her company and society, as also of one dollar. The daughter-in-law becoming dissatisfied, abandoned his house as her home, and returned to her father. Jenkins thereupon filed a bill to cancel the deed, which was sustained by the court. The case before us is stronger than that. For here Miller has surrendered all, home and property at once, and become wholly dependent upon Frazier for a subsistence and shelter, as well as a house and domestic comforts and enjoyments of society. To be treated with unkindness, harshness and blows, under these circumstances, as a fulfillment of the obligation for a house, shelter, food, raiment, and social and domestic happiness, is more than human nature can bear or a court of equity tolerate. These circumstances, in connection with the act of taking the bond and refusing to supply Miller and wife with necessaries, may well justify the inference of an abandonment of the contract by Frazier, and a presumption of a fraudulent intent in entering into it.

The case is unlike one of ordinary transactions for gain, and I feel constrained to draw a distinction between them. When admonished by age, feebleness and decline, of an incapacity for business, and for the end, aim and object of forever renouncing the care, toil and labor of life, we come to dispose of and give up our all of earthly goods for the consideration of maintenance, we feel that as far as equity and justice permits, we should take the same supervision and care of the vendor, if we cannot put him again upon the footing of his first infancy.

There is occasionally a new case arising out of the ordinary beaten track of equity, yet the courts have not hesitated to give the proper specific relief because there was no precedent. Such was *Morton* v. *Relly*, 2 Eden, 286, where fanaticism was used as a means of procuring money and a deed. Lord Chancellor Nottington decreed an account of the money and a delivery up of the deed. He remarked that it was the " first

of the kind that ever came before this court, and I may add before any court of judicature in this kingdom." "And shall it be said that this court cannot relieve against the glaring impositions of these men? That it cannot relieve the weak and unwary, and especially when the impositions are exercised upon those of the weaker sex? It is by no means arguing agreeably to the practice and equity of this court to insist upon it. This court is the guardian and protector of the weak and helpless of every denomination, and the punisher of fraud and imposition in every degree. Yes, this court can extend its hands of protection. It has a conscience to relieve, and the constitution itself would be in danger if it did not."

In *Huguenin* v. *Basely*, 14 Ves. Jr. 273, deeds were canceled upon the ground of ignorance and undue influence. And the same ground was the basis of the decree in *Purcell* v. *McNamard*, 16 Ves. Jr. 118. This contract on the part of Frazier was executory; continuing so on his part during the natural life of Miller and wife. What might be the cost of a support now, or this year, might, with varying prices, be totally inadequate another year. No assessment of damages can be made to meet the estimate of the cost of their support.

Lord Hardwicke, in *Taylor* v. *Neville*, cited in *Buxton* v. *Lister*, 3 Atk. 383, decreed specific performance of a contract for the sale of 800 tons of iron, to be delivered and paid for in instalments in a certain number of years—putting it upon a distinction between executed and executory contracts. And this is cited and approved in *Adderly* v. *Dixon*, 1 Sim. and Stu. 610, by the vice chancellor, who says they differ in this respect: " that the profit upon the contract being to depend upon future events, cannot be correctly estimated in damages where the calculation must proceed upon conjecture. In such a case, to compel a party to accept damages for the non-performance of his contract, is to compel him to sell the actual profit which may arise from it at a *conjectured* price. In *Ball* v. *Coggs*, 4 Bro. P. C. 140, specific performance was decreed in the House of Lords of a contract to pay the plaintiff a certain annual sum for his life, and also a certain other sum for every hundred weight of brass wire manufactured by the defendant during the life of the plaintiff. The same principle is to be applied to this case. Damages might be no complete remedy, being to be calculated merely by conjecture; and to compel the plaintiff in such a case to take damages, would be to compel him to *sell* the *annual provision during his life for which* he had *contracted* at a conjectural price." And so he decreed a specific performance of the sale of debts proved under a commission of bankruptcy. So must a jury and witnesses in this case assess the damages upon

two conjectural estimates: first, upon the annual costs of their maintenance for years to come; and secondly, upon a conjecture as to the number of years they might live. The value of the land and personalty transferred is not the criterion of damages, and is not a safe reliance.

The case made by the bill would undoubtedly entitle Miller to a decree for a specific performance, if the nature of the contract was such as could be enforced by decree. So far as providing means is concerned, it can be. But the personal amenity of deportment of plaintiff towards defendant, and that social kindness indispensable to his happiness in his family, cannot be enforced. Defenses to the specific execution of contracts may be sustained upon evidence which would be insufficient to warrant a decree either to enforce or rescind. But the proof that would authorize its enforcement, may be also sufficient to its rescision in a proper case.

It is in this light we regard the case before us. And as Miller may be restored *in statu quo* in relation to the land, and adequately compensated in money for the value of the personalty, and nothing appearing to show that Frazier has done any act in fulfilment which will render such a decree unjust to him, we think the decree should be affirmed, as damages at law upon the bond do not appear, for the reasons stated, to be a full, complete and effectual remedy to him, under the circumstances of this case.

*Decree affirmed.*

TREAT, C. J., did not express any opinion in this case.