## FRANZ MAMERO

### v.

## WILLIAM HENSCHEL.

CHANCERY.—The court is of opinion that the evidence in this case supports complainant's theory that the surrender of all his property and means of support to his son-in-law, was upon the consideration that the latter would support him during his life, and was not a mere gift. The son-in-law refusing to perform his contract, equity has jurisdiction to rescind such contract.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding. Opinion filed December 8, 1886.

Mr. ARNOLD TRIPP, for appellant; that equity will interfere in a case like this, cited 1 Story Eq. § 246; Underhill v. Harwood,

10 Vt. 209; Copes v. Middleton, 2 Mad. Rep. 556; Stillwell
v. Williams, 1 Jac. 280; McArtee v. Engart, 13 Ill. 242;
Brown v. Schuler, 41 Ill. 192; McCormick v. Miller, 102 Ill.
208.

Mr. THOMAS SHIRLEY, for appellee.

BAILEY, J.    This was a bill in chancery, brought by Franz
Mamero against William Henschel, to set aside the cancella-
tion of a promissory note for $3,000, and the release of a
trust deed securing the same, and for a foreclosure of said
deed of trust.    The case, as shown by the pleadings and evi-
dence on the part of the complainant, is, in substance, as fol-
lows:

In 1874, Mamero, being the owner of certain real property
in Cook county, entered into an arrangement with Henschel,
who was his son-in-law, for the conveyance of said property
to Henschel, the latter to pay nothing for it, but to execute
and deliver to Mamero his two promissory notes, one for
$1,000 and the other for $2,000, and to secure the same by
two deeds of trust on said property, it being agreed that if
Henschel wished to retain said property, he should pay said
notes with interest, and if not, he was to deed the property
back to Mamero.    Mamero was to collect the rent, and in
case of his death, Henschel was to have the property clear of
incumbrance.    Under this arrangement the property was
deeded to Henschel, and he executed the notes and deeds of
trust.    The $1,000 note and deed of trust were afterward de-
posited by Mamero with one Niehoff as security for a loan,
and some time in 1877, when Mamero paid off said loan, said
deed of trust was for some reason released.    In September,
1881, the $2,000 deed of trust was also released, and a new
note for $3,000, and a deed of trust securing the same, were
executed by Henschel to Mamero, on substantially the same
agreement as before.    After the conveyance Mamero col-
lected the rents, and managed the property in all respects as
if it were his own, and continued to do so until about June,
1883.    Mamero was a man over seventy years of age and

somewhat infirm, and in consequence of an improvident contract made by him at about the date last mentioned for certain changes and improvements in the building on said premises, Henschel suggested that he had better have the management of the property in his own hands and collect the rents, promising to give the same to Mamero for his support during his life, and if the rents should not be sufficient for that purpose, to apply as much of the property as should be necessary for Mamero's support during life, Henschel to retain as his own whatever should remain after Mamero's death.

This proposition was acceded to by Mamero, and to effectuate the arrangement, Mamero surrendered to Henschel the note and deed of trust for $3,000, and the note was canceled and the deed of trust released of record. No money was paid by Henschel as the consideration for the surrender and cancellation of the note and deed of trust, the only consideration being Henschel's promise to furnish Mamero his support during his life. The note and deed of trust, at the time of their surrender to Henschel, constituted all the property and means of support that Mamero had. Mamero was then and for some time had been, living with Henschel. After Henschel had obtained the cancellation of said securities in manner aforesaid, he refused to carry out the agreement to support Mamero, denying his liability so to do, appropriated said rents to his own use, and claimed said property as his own, free from any claim on the part of Mamero, and threatened to sell the same and remove permanently to Europe.

All of the equities of the bill are denied by the answer, and in many respects the evidence given on behalf of the defendant tends to disprove the facts above stated, but on considering all the evidence, we are of the opinion that it preponderates strongly in favor of the complainant, and that it sustains the complainant's case as above stated in all its essential features.

The court, at the hearing, dismissed the bill for want of equity at the costs of the complainant, who brings the record to this court by appeal.

We are of the opinion that the prayer of the bill should have been granted, and a decree rendered setting aside the

cancellation of the note and the release of the deed of trust' and for a foreclosure. The earliest reported case in this State involving principles analogous to the present one, is Frazier v. Miller, 16 Ill. 48. There the complainant conveyed all his real and personal property to the defendant, upon condition that the defendant would support and take care of the complainant and his wife during their lives, the defendant giving a bond to that effect, but subsequently obtaining possession of said bond and withholding it from the complainant. The defendant did not perform his contract, but maltreated the complainant and his wife, and it was held that the complainant might proceed by bill in equity to have the conveyance rescinded. It was urged then, as it is here, that the complainant's remedy was at law upon the contract, for support, but it was held, for reasons which are manifestly unanswerable, that under the peculiar circumstances surrounding cases of this character, the remedy at law is inadequate, and that a court of equity can give a more specific and effectual remedy by restoring the property. It was admitted that the case was new, and almost a matter of first impression, but the rule is applied, that where new cases arise out of the ordinary beaten track of equity, the courts do not hesitate to give the proper specific relief because there is no precedent. It was accordingly held that, under the circumstances, a decree rescinding the contract might be based upon the inference of an abandonment of the contract by the defendant, and also a presumption of a fraudulent intent in entering into it.

The case of Oard v. Oard, 59 Ill. 46 was like the foregoing in all its essential features, and the court, in holding that a bill might be maintained to rescind the contract, say : " Cases of this sort are rare in our books, as, fortunately for our common humanity, they are rare in actual life. But, as was said by this court in Frazier v. Miller, when they do occur they appeal so strongly to the conscience of the court for relief, that if the rescission of the contract can not be referred to any other head of equity jurisdiction, it would be proper to presume that it was made in the first instance with a fraudulent intent."

Mamero v. Henschel.

A somewhat analogous principle was applied in Rockafellow v. Newcomb, 57 Ill. 186.   There the complainant conveyed land to the defendant in consideration of a marriage contract, but after the conveyance the defendant refused to perform the contract.   It was held that the refusal to marry destroyed the consideration, and that equity would rescind the contract on that ground.   See also James v. Neely, 72 Ill. 449.

In the present case the complainant was the owner of a promissory note for $3,000, secured by a deed of trust, which constituted the sum total of his property and means of support.   This he surrendered to the defendant, and if the consideration of such surrender was not a contract for support for the residue of his life, it was a mere gratuity.   The defendant does not claim that he paid anything for the securities, but alleges that they were a gift.   The version of the transaction given by the complainant is far the most reasonable, and is supported, in our judgment, by a large preponderance of the evidence.   The defendant is not only shown to have refused to perform the contract which was the only consideration upon which he obtained the note and deed of trust, but by his answer and evidence he now repudiates all obligation to do so.   The complainant in his old age is thus turned adrift helpless and penniless, and it would be a reproach to the administration of justice, if a court of equity, which claims to be the guardian and protector of the weak and helpless, and the punisher of fraud and imposition, could find no mode of administering adequate and effective relief.

The decree will be reversed and the cause remanded with directions to the court below to enter a decree setting aside the cancellation of the said note and vacating the release of the deed of trust, and for a foreclosure of the deed of trust and a sale of the mortgaged premises for the amount appearing to be due on said note.

Decree reversed.