## Christian Hospital, et al., v. The People of the State of Illinois, ex rel. John B. Murphy.

Gen. Nos. 12,242 and 12,248.

CONSOLIDATED FOR HEARING.

1. CONTEMPT—*when violation of injunction appears.* Where it is apparent from all the evidence that there was an attempt to evade an injunction, and the obedience thereof, if obedience there was, was more nominal and pretended than real, an order adjudging in contempt is proper.

2. INJUNCTION—*when injury and damage to support, will be inferred.* If a complainant is entitled to an injunction to protect his property rights, injury and damage will be inferred in support of the injunction.

3. INJUNCTION—*when verification of bill for, defective.* The verification of a bill for an injunction is defective where the complainant swears that the contents of the bill "are true in substance and in fact except so far as they are stated on information and belief, and as to such matters as are stated to be upon information and belief," affiant believes them to be true.

4. INJUNCTION—*defective verification of bill will not purge defendant of contempt.* The fact that the bill upon which an injunction has been granted was improperly verified, will not authorize the disobedience of such injunction.

5. INJUNCTION—*erroneous granting of, does not preclude holding the defendant in contempt for violation of.* The fact that the granting of an injunction is erroneous is not material by way of defense to a proceeding for contempt for violation if jurisdiction to grant the injunction existed.

6. INJUNCTION—*when propriety of granting, must be questioned.* The propriety of granting an injunction cannot be questioned in a proceeding for contempt. Such question can only be raised by a direct proceeding.

Injunctional proceeding. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Affirmed. Opinion filed March 23, 1906.

**Statement by the Court.** This is an appeal from an order of the Superior Court finding appellants and each of them guilty of contempt in wilfully violating an injunction. Appellant Wood was sentenced to be confined in the Cook County jail for ten days and to pay a fine of $100.

The Christian Hospital was fined $250. Each of the defendants prayed and perfected an appeal, and the causes have been consolidated for hearing.

John B. Murphy filed his bill of complaint June 3, 1903, setting forth that he is a licensed physician and surgeon and has been practicing his profession in Chicago for more than twenty years, devoting his attention largely to the practice of surgery and perfecting himself in that branch of his profession. He states that he occupies a number of prominent positions, among them that of professor of surgery in the Northwestern University Medical School, also in the Post Graduate School, surgeon on the attending staff of each of four hospitals in Chicago, president of the Chicago Surgical Society and member of six other medical and surgical societies and associations. For many years he has been engaged in the advancement of his profession and has contributed largely to medical journals, acquired a very extensive acquaintance with the members of his profession throughout the United States and foreign countries, and many patients have travelled from other States to Chicago to be operated upon by him. He has frequently been called to other States to perform operations, and a portion of his practice has developed by means of professional standing he has acquired through other doctors and surgeons and from their recommendations, which constitutes a valuable part of his revenues. May 12, 1903, he received a letter signed by "Christian Hospital, N. News Wood, Pres. & Supt.," informing him that he had been elected president of the medical and surgical staff of the defendant, Christian Hospital, and asking him to accept the honor, allow his name to be placed at the head of its staff and allow them to call him in consultation whenever they have important surgical cases able to reward him with substantial fees. The letter stated the writers had printed an elegant certificate for members of the staff, one of which they sent him with his name neatly engrossed therein and "handsomely framed." The letter was written on a printed letter head of the Christian Hospital,

Christian Hospital v. The People.

upon which complainant's name appears "John B. Murphy, M.D., LL.D., President of Staff."

Complainant states that up to that time he had never heard of the Christian Hospital, had no dealings with anyone purporting to be connected with it, and the receipt of the letter was the first intimation he had of the use of his name in connection therewith. Shortly after the mails brought him letters daily from doctors over the country, some reprimanding him for becoming a party to the alleged fraudulent scheme of said hospital, some warning him that his name was being so used, others inquiring whether he was in fact interested in the institution and some enclosing copies of literature which said hospital and N. News Wood had sent broadcast through the country to members of the medical profession. In some of these publications complainant's name appears as president of staff or as "Præfectus Potestatis Medicorum," especially on proposed certificates of membership where it is accompanied by a picture of complainant in operating attire about to undertake an operation in clinic. He states that use of his name in such connection, as well as the use of such photographs, was and is entirely without his knowledge and consent. This literature purports to have been dated the same day the letter above referred to was addressed to him, but some of it was mailed before that date. Complainant states that mere reading of said literature suffices to convince one that its purpose was to obtain money by false pretenses, falsely representing that complainant and others well known to the medical profession were connected with the said Christian Hospital. He states that such advertising for patients by a physician and surgeon is considered highly unprofessional and one who does it is held in disrepute by his fellow practitioners and all well informed people; that the placing of his name upon its letter heads and the use of his name as president of its staff, or as in any manner connected with said hospital, is an iniquitous deception upon the public and a fraud upon his rights, which has injured him among the members of his profession and shaken the confidence in him of many of

them, causing him loss of their good will as well as financial loss, and will injure him further and irreparably unless such use of his name is enjoined.

The bill prays for an injunction, which was granted and served on the defendants June 3, 1903, the day when the bill was filed. In and by the injunction writ, the Christian Hospital, N. News Wood and others are enjoined from in any manner using John B. Murphy's name, signature or picture in connection with Christian Hospital; from sending out any more literature of the same kind or similar to that sent out by Christian Hospital on or about May 12, 1903, from using, distributing or mailing any letter upon the letter head of said Christian Hospital on which complainant's name appears; from using John B. Murphy's name, signature, picture or alleged signature or picture in connection with any certificate of membership, diplomas or other instrument relative to the business conducted by Christian Hospital; from representing in any manner by word, act or deed, expressly or impliedly, that John B. Murphy is now or ever has been connected with said Christian Hospital or any of the officers thereof; and from in any manner inducing the public or members of the medical profession to believe that said John B. Murphy is connected with the staff of said Christian Hospital as a surgeon or honorary member thereof or in any other manner.

No appearance was entered by the defendants and no answer to the bill filed. Upon the 20th of October, 1904, complainant filed an affidavit and application for attachment asking that appellants be punished for contempt for violation of said injunction, setting up that after issue and service of the injunction writ, and while it was in full force and effect, the defendants delivered to each of a number of persons being licensed physicians named, a certificate of membership in the staff of Christian Hospital, upon which was a picture of complainant and that they sent out literature using the name and picture of complainant in connection with said hospital representing that he was connected therewith, inducing the public and certain of the medical pro-

fession to believe that he was so connected as surgeon or honorary member of the said hospital's staff. The petition or application was subsequently amended. The defendants demurred to the application, and October 29, 1904, filed an answer admitting service of the writ and asserting it to be void. Respondent Wood answers under oath in his own behalf and that of the Christian Hospital, admitting the issue of certificates containing a picture of a group of persons, but states that he has no knowledge as to whether one of them is or is not Dr. Murphy, denies that it is a good likeness of him and states that at the time of printing the picture and issuing said certificates respondent did not know and did not believe that said Murphy's picture appeared in said group—that the picture is mere matter of ornamentation upon said certificates and has never been expressly or impliedly represented by defendants to be the picture of John B. Murphy. Respondent denies that said defendants or any of them or any one in their behalf induced the parties named in the bill to believe that complainant was connected with said Christian Hospital, but avers that on the contrary before consummating any business with them or issuing certificates to them he fully apprised them that complainant Murphy was in no way connected with said hospital. He denies that since the issue of said injunction the name of complainant has been used in any manner in 'connection with said hospital except to inform correspondents that said John B. Murphy was not and would not be at any time a member of the hospital staff or in any way connected with it; and that said ornamental picture has not been used in any manner tending to indicate to any person whatever that said John B. Murphy was a member of the staff or in any way connected with said Christian Hospital.

The cause came on to be heard on or about December 29, 1904, upon the application of complainant that said defendants be adjudged guilty of contempt, and all parties being present the court found the defendants guilty of violating the injunction, in that after service of the writ upon

them, they had sold and delivered to certain named physicians and surgeons certificates of membership in the staff of the Christian Hospital, upon which certificates appeared when delivered a picture and the name of the said John B. Murphy; that by literature delivered to certain purchasers of such certificates, said purchasers were induced to and at the time of delivery of said certificates did believe that said John B. Murphy was or had been connected with said Christian Hospital and was a member of its medical and surgical staff.

W. KNOX HAYNES and CHARLES C. GILBERT, for appellants; W. KNOX HAYNES, of counsel.

KNIGHT & BROWN, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is urged that the Superior Court erred, in adjudging the defendants or either of them guilty of wilfully violating the injunction, that there is no evidence tending to show complainant was damaged by the alleged acts of the defendants or either of them, that the injunction was granted in violation of the statute upon a defective affidavit and that the court was without jurisdiction.

First. Assuming for the purposes of the argument that the Superior Court had lawful authority to issue the writ of injunction, it is contended nevertheless by appellants' counsel that it must appear from the evidence and does not so appear, that the respondent, N. News Wood, A.M., M.D., who represents both himself and the other appellant, wilfully violated it with intent to set at naught and bid defiance to the authority of the court. In Hughson v. The People, 91 Ill. App., 396–398, we said, "where disobedience of a decree is not wilful and does not clearly appear to have arisen from intent to set at naught or bid defiance thereto, the power to punish for contempt cannot be properly exercised." We held in that case there was "apparently no reason to suppose that either the corporation or appellants

Christian Hospital v. The People.

had any intention of refusing to comply with the decree."
See also Kahlbon v. The People, 101 Ill. App., 567.    There
is not, so far as we can discover, any claim that defendants
ever had actual authority to use complainant Murphy's name
in connection with  the Christian Hospital or its staff.    De-
fendant Wood states that he was informed by some one
not produced that Dr. Murphy was not unwilling.    This
was at the most a very slender excuse for making use of
the name of a physician and surgeon of good standing as
endorsing an institution issuing advertising matter such as
appears in this case.    Whether it is in accordance with the
ethics of the medical profession to offer to those sending
cases to the hospital a cash commission of 25 per cent. in
medical cases and 50 per cent. in surgical cases, together with
a proposition that a medical man sending a case might him-
self spend a few days there taking a post graduate course
while "the patient (through us) will pay all your expenses,"
we need not stop to inquire.    It is to be hoped that no
reputable physician or surgeon would be willing to have
his name exploited as a party to such a scheme.

Appellant Wood states under oath his version of the man-
ner in which he came to make use of complainant's name.
From his answer it appears to have been thought desirable
to obtain some well known physician to accept the honor-
ary position of chief of the staff of the new Christian Hos-
pital, a corporation of which he—Wood—is principal owner.
With this end in view one Arthur C. Probert, who was,
respondent says, engaged with him in the enterprise of sell-
ing to medical men certificates of membership in the hos-
pital, undertook to procure such well known physician to
act as honorary president.  He reported that he had ob-
tained the assent of Dr. John B. Murphy, the complainant,
to acceptance of such appointment.    Acting upon this in-
formation, certificates were engraved and letter heads pre-
pared upon which Dr. Murphy's name and apparently a
facsimile of his signature appear, representing him as
president of staff.    Some of these were mailed before any
notice of such use of his name was communicated to com-

plainant. Two days thereafter—May 12, 1903—a certificate of appointment was sent to complainant, engraved and "handsomely framed," accompanied by a letter of that date expressing the "desire that you accept this honor" and requesting him to notify the defendants "of your acceptance of this appointment." This, according to the bill, was the first time complainant had ever heard either of the Christian Hospital or its President N. News Wood. The latter states that hearing nothing to the contrary from Dr. Murphy, he proceeded in good faith in the belief that the use of the name was with complainant's full assent, such belief being founded on the representation of Probert and the silence of Dr. Murphy after receipt by him of appellants' letter of May 12th, without protest, repudiation or suggestion, as it is said, that such use of his name was contrary to his wishes. Respondent states that upon service of the writ of injunction June 3, 1903, which he says was the first notice he received that such use of Dr. Murphy's name was contrary to the latter's wishes, he at once proceeded so far as was in his power to undo all that had been done in the premises affecting Dr. Murphy; that he returned to every person who had purchased such membership the amount paid therefor and sent with such remittance a letter, which is set forth in full, stating in substance that Dr. Murphy had "repudiated his appointment as president of the staff" of the hospital and "claimed that his name had been used without authority for the probable purpose of inducing you and other physicians to become members of the general staff of the hospital." The letter further states that the hospital desires to practice no deception or obtain money under any misrepresentation or misconception, and therefore encloses check for the amount which had been remitted, so that if dissatisfied the recipient could retain the check and return his certificate of membership, or if desirous of retaining membership send back the check. Respondent further states that thereafter in response to further requests for membership in a letter (also set forth in full) was sent to every new applicant stating in substance that the use of Dr. Murphy's name representing him to be

president of the surgical staff of the hospital had been repudiated and that Dr. Murphy claimed the use of his name had been the inducing cause by which other physicians had been induced to join the staff. The applicant was informed that if the representation that Dr. Murphy was president of the hospital was in any way an inducing cause for his application, the hospital "would have to decline to take your money or issue you a certificate." Respondent avers that in each of the cases where affidavits had been made in behalf of appellee, the purchase of membership and issue of certificate was with full knowledge of the applicant after having been advised by appellant that Dr. Murphy was in no way connected with the hospital. This last averment appears to be sustained by original letters from persons concerned, produced to the Superior Court and shown in the record before us.

With reference to the picture alleged to represent Dr. Murphy in operating costume at a clinic, respondent states under oath that it represents an operating room in a hospital and a clinical demonstration, at which a large number of persons are portrayed; that the picture was used as an embellishment of the certificates; and that none of the persons portrayed in said picture, as affiant believes, is Dr. John B. Murphy; that at the time of designing the certificate affiant believed that a picture of an operating room would be a proper ornamentation for such certificate, and obtained a photograph which had been publicly published under such circumstances that affiant is advised and believes no proprietary rights in it could exist and it was the common property of any one who desired to reproduce it; that he was informed and believed at the time and now believes the prominent figure at the operating table in said picture to be Dr. John B. Deaver of Philadelphia, and that he bases such opinion upon the printed title to said picture which he says represented it to be Professor J. B. Deaver. Affiant further states that he was not apprised at the time of the service of the writ of injunction that said ornamental picture was claimed by complainant to be his picture, and that

in the further use of certificates containing said picture, he was under the absolute belief that Dr. Murphy's picture did not appear upon said certificates, and that he had a lawful right to use said published picture or any other so long as it did not contain the picture of the complainant. There are other affidavits taking up in detail cases in which it is charged the injunction was violated, and tending to show that in such cases no violation occurred. Respondent states he had no desire to make any use of Dr. Murphy's name or picture after the injunction issued and therefore entered no defense to the suit and paid no attention to it. He insists that he "has, as he believes, observed the said injunction order since its issue both in letter and spirit." The published photograph from which the engraved picture in controversy was reproduced contains an inscription as follows: "Professor J. B. Deaver conducting Professor J. B. Murphy's clinic, New Clinical Amphitheatre at Mercy Hospital, Chicago, Feb. 13, 1903. Photo by C. E. Waterman, 5413 Jackson Ave., Chicago."

Whatever opinion may be entertained of the ethics of the advertising methods pursued by the respondent, the question whether he was properly adjudged guilty of contempt for violating the injunction is one of fact and intent. The affidavits of Doctors Haines, Beam and Gray, filed in behalf of complainant, are apparently disproved by their own letters produced in evidence. Respondent states that subsequent to the issue of the injunction he directed an employee to blot out and erase Dr. Murphy's name from certificates subsequently issued, and that in two cases while the name is partially blurred by a rubber stamp and the name of another doctor appears above it, yet the name of Murphy is partially exposed. Respondent swears that he was not aware of this, and that if he had been, such forms of certificate would not have been issued. If it appeared that the certificates referred to indicated sufficiently the intention to erase the complainant's name and substitute another, this explanation might serve to disprove the charge of wilful violation of the court's order. But there is evidence tending to show

that not in one case only, but in others, the effect of the rubber stamp has been not to blur or efface the complainant's name, but rather to emphasize it.    In some of these engraved forms sent out after service of the injunction as an inducement to physicians to purchase certificates of membership in the hospital staff, the effect of the stamp was to furnish a background upon which complainant's name stands out rather more conspicuously than the others, as president of the hospital staff.    The purpose of the stamp might well be understood to have been to insert another name above that of complainant instead of obliterating the name of the latter. The injunction restrained appellant from representing in any manner that Dr. Murphy "was then or ever had been connected with said Christian Hospital or any of the officers thereof."    The use of these certificates was a representation in effect that Dr. Murphy had been at least connected with it, and might be understood as indicating that he was still so connected.    The evidence that Dr. Murphy's is the most prominent figure in the picture is preponderating; and when the latter was published under the name "Christian Hospital" with a *facsimile* of complainant's signature purporting to show that he was or had been president of the staff of said hospital, its use was certainly a violation of that part of the injunction prohibiting the use of complainant's name, signature or picture in connection with the hospital. The picture alone without the accompanying name and signature was probably public property.    We are of opinion that whatever may have been in appellant's mind his intent as revealed by acts showed a wilful violation of the injunction.    It was his duty, if he intended to respect it in letter and spirit, to make no use of forms containing complainant's name.

Nor do we think the letters sent out by appellant after service of the writ, exonerated him from attempted evasion if not violation of the injunction.    While one of them states that since the original representation was made complainant had "repudiated his appointment as president of the staff, and has claimed that his name had been used without au-

41

thority for the probable purpose" of inducing other physicians to become members, another letter states that "since that time there has been a misunderstanding with Dr. Murphy, and he declines to remain or be represented as president of the staff," etc. This language conveys the impression not that Dr. Murphy was not and never had been connected with the hospital, but that owing to a "misunderstanding" he had severed a relation which in fact never existed. Special care was used to avoid giving any just idea as to the nature of the so-called misunderstanding, and the phraseology employed tended rather to reflect injuriously upon Murphy than otherwise. We are of opinion appellants were properly adjudged guilty of wilful violation of the injunction.

Second. It is said that there is no evidence of damage suffered by complainant. The bill contains allegations which are not denied, tending to show that respondents' alleged conduct is and has been prejudicial to complainant and productive of pecuniary loss. The chancellor found that he was entitled to the injunction and if so entitled, complainant is also entitled to be protected against its violation, since in such case "injury and legal damage will be inferred." Loven v. The People, 158 Ill., 159–169.

Third. It is said that the injunction was erroneously issued upon a bill not properly verified. That the affidavit was defective is, we think, evident. In it, complainant swears that the contents of the bill "are true in substance and in fact, except so far as they are stated on information and belief; and as to such matters as are stated to be upon information and belief," affiant believes them to be true. What part of the contents of the bill are included in the exception, and yet not stated in the bill to be on information and belief, the affiant does not indicate. The affidavit actually verifies nothing in the bill, but matters stated therein to be on information and belief. Stirlen v. Neustadt, 50 Ill. App., 378. If, however, equity clearly has jurisdiction of the subject-matter and the parties "a defect in the verification of the bill certainly could not oust the court of jurisdic-

tion." North v. Schwartz, 79 Ill. App., 557–559. The defect might be a reason for dissolving the injunction on motion, but appellants had no warrant to disobey the injunction because in their opinion the bill was not properly verified.

Fourth. It is contended that the Superior Court had no jurisdiction to issue the writ of injunction. The ground for this contention is that the bill is based upon appellants' alleged misconduct in using complainant's name in a manner calculated to bring him into disrepute with fellow members of his profession, and that this is equivalent to saying that the acts of the respondents are libelous. Consequently, it is argued, the subject-matter of the bill is not cognizable in equity, the writ of injunction was void and appellants not guilty of contempt in disobeying it. If we assume that the complainant had an adequate remedy at law, the writ of injunction is not necessarily void, even if the Superior Court be deemed to have erroneously exercised its power to issue the injunction. In Curtiss v. Brown, 29 Ill., 201–231, it was said by Mr. Chief Justice Caton that "in many cases the question of jurisdiction is considered as distinct from that of power. We often find the jurisdiction denied where the power exists, but ought not to be exercised, and in this sense is the word jurisdiction usually used when applied to courts of chancery. Where there is a want of power the decree is void collaterally, but where there is said to be a want of jurisdiction merely it is only meant that it would be erroneous to exercise the power and the decree would be reversed on appeal. It means a want of equity and not a want of power." In Sumner v. The Village of Milford, 214 Ill., 388–393, it is said: "Jurisdiction is authority to hear and determine a cause—authority to decide. It is the power conferred by law to hear and determine controversies concerning certain subjects, and as applied to the particular controversy it is the power to hear and determine that controversy. (11 Cyc. 660; People v. Talmage, 194 Ill., 67.) If a court has jurisdiction, its judgment may be directly attacked for errors or irregularities, but however manifestly erroneous the

decision may be, it is binding until reversed or set aside in a direct proceeding for that purpose. The exercise of the jurisdiction may be erroneous, but if the court has authority to decide the case at all, every party brought within the jurisdiction must make his defense, and the judgment can only be set aside by appeal or on error when such remedy is available. In Hunt v. Hunt, 72 N. Y., 217–229, it was said that jurisdiction of the subject-matter does not depend upon the ultimate existence of a good cause of action in the plaintiff in the particular case; and again, "Jurisdiction of the subject-matter is power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case arising or which is claimed to have arisen under that general question." Here the Superior Court had jurisdiction of the subject-matter and the parties.

It has been held that an injunction will not lie to restrain the circulation of derogatory statements because if libelous the injured party had a remedy in a court of law. Chi. City Ry. Co. v. Gen. Elec. Ry. Co., 74 Ill. App., 465–474. Appellants' counsel cite Clark v. Freeman, 11 Beaven's Rep., 112–118, in which the name of Sir James Clark, an eminent English physician, was fraudulently used with the addition of an e to the last name in connection with so-called "consumption pills," and an injunction was refused on the ground that the offense must first be established at law. In Routh v. Webster, however, 10 Bevan, 561, where, much as in the present case, the name of the complainant was published without authority in a prospectus as a trustee of the company, the Master of the Rolls granted an injunction. The propriety of the injunction order in the case at bar is not, however, before us. Appellants' claim is that as against a libel or slander a court of equity will not enjoin, because the question should first be submitted to a jury. Flint v. Hutchinson S. B. Co., 16 L. R. A., 243. But there are cases in which a court of equity will assume jurisdiction, even though there may be an adequate remedy at law. The general rule to the contrary has its exceptions. Fraizer v.

Miller, 16 Ill., 48, 49, 50; Tunesma v. Schuttler, 114 Ill., 156–164; Stickney v. Goudy, 132 Ill., 213–227; G. T. & C. G. R. R. Co. v. Walton, 150 Ill., 428–436. Whether the power to grant the injunction was rightfully exercised in this case on the ground of fraud or injury to property rights or otherwise, is a question which could only be properly determined in a direct proceeding upon appeal from the injunction order. Until so reviewed and reversed or set aside it is binding and must be obeyed.

The judgment of the Superior Court will be affirmed in both cases.

*Affirmed.*