NANCY GILLEN, Plaintiff in Error, *vs.* CLINTON GILLEN *et al.* Defendants in Error.

*Opinion filed February 19, 1909.*

1. DEEDS—*when execution and recording of deed does not have effect of a delivery.* Where a grantor goes alone to a scrivener and executes a deed, which is left with the scrivener, who has it recorded and returned to the grantor, the execution and delivery of the deed do not have the effect of a delivery to the grantee, where the latter did not know of such execution and recording at the time and never had possession of the deed.

2. SAME—*what amounts to a recognition of delivery such as vests title.* Where a grantor has executed and recorded a deed, of which she retains possession, the subsequent conveyance by herself and the grantee, to a third person, of a portion of the premises and the division of the purchase money between the grantor and the grantee amount to a recognition of the delivery of the former deed, such as vests title in the grantee.

3. SAME—*when deed made in consideration of support will be set aside.* A deed made in consideration of the support of the grantor by the grantee during the grantor's lifetime will be set aside in equity, at the suit of the grantor, upon proof that the grantee has failed to keep his agreement.

4. SAME—*what is a proper basis of accounting on setting aside deed made in consideration of support.* In setting aside a deed for

failure of the grantee to keep his agreement to support the grantor, money received by the grantee from the sale of a portion of the premises, together with interest thereon, is properly charged against him, but he is entitled to credit for his payments of taxes and special assessments, with interest.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

RAY & DOBBINS, for plaintiff in error.

SAVAGE & WOODS, for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed in the circuit court of Champaign county by Nancy Gillen, the plaintiff in error, against Clinton Gillen and his wife, Georgia Gillen, the defendants in error, to set aside a deed bearing date September 29, 1890, from Nancy Gillen to Clinton Gillen, conveying to the said Clinton Gillen, subject to the life estate reserved to the complainant, lots 121 and 122 of a subdivision of the south part of lot 1, in the south-west quarter of section 7, township 19, in the county of Champaign, State of Illinois, and for an accounting. An answer and replication were filed and the cause was referred to the master to take the evidence and report his conclusions. The master filed a report, in which he recommended that a decree be entered in favor of the complainant. Objections filed by both the complainant and defendants were overruled, and the same having been renewed as exceptions in the circuit court, the exceptions of the defendants were sustained and a decree was entered dismissing the bill for want of equity, and the complainant has prosecuted this appeal.

It appears from the pleadings and proofs that the complainant, at the time the case was tried, was upwards of ninety years of age and was the grandmother of the defendant Clinton Gillen; that in 1861 the complainant and

her husband resided in the city of Champaign, in a rented house; that William Gillen, the father of Clinton Gillen and the son of the complainant, who was a river captain on the lower Mississippi, brought the mother of Clinton Gillen, and Clinton Gillen, who was then three weeks of age, to the house of complainant and her husband; that soon thereafter the mother died; that after the close of the war of the rebellion, William Gillen, who had been in the army, visited his father and mother and purchased the premises in question for $2800 and caused the same to be conveyed to his mother as a home. The husband of complainant died in 1880. In 1890 the complainant went to a scrivener in the city of Urbana and caused the deed sought to be set aside to be prepared, signed the same and acknowledged it and directed the scrivener to have the same recorded, and after it was recorded to return the same to her. The deed was recorded and returned to the complainant and has never been in the possession of Clinton Gillen, but has remained in the possession of the complainant from that time until the trial. In 1897 lot 121 was sold and conveyed to one Armstrong for the sum of $650, $50 of the purchase price being paid to a real estate agent as commissions, $150 to the complainant and $450 to Clinton Gillen. The complainant was residing upon the premises at the time the bill was filed, and the defendant Clinton Gillen has paid the taxes on lot 122 since the year 1897.

It is first contended by the complainant that the deed from herself to Clinton Gillen was not delivered. The evidence is conflicting. We think, however, it clearly appears therefrom that the complainant went to Urbana alone and had said deed prepared, and that she there signed and acknowledged it and caused it to be recorded and then returned to her, and that Clinton Gillen did not know that the deed had been executed or recorded until after the same had been executed and recorded, although it is quite apparent that there had been some talk between the parties

about making the deed prior to the time it was executed and recorded. We are inclined to the view that the executing and recording of the deed did not have the effect to vest the title in Clinton Gillen. (*Abrams* v. *Beale,* 224 Ill. 496.) We think, however, that the sale and conveyance of a portion of the premises by the complainant and Clinton Gillen to Armstrong, and the division of the purchase price between them, was such a recognition of the delivery of said deed as to have the effect to vest the title to the premises in Clinton Gillen by virtue of said deed. (*Phelps* v. *Pratt,* 225 Ill. 85.) The evidence, however, we think clearly shows that the complainant had an understanding with Clinton Gillen, before the deed was made, that in consideration that she would convey said premises to him he would support her and care for her during the remainder of her life. At the time the deed was made the family of complainant consisted of herself, her daughter, Ella Gillen, who was upwards of forty years of age and unmarried, and Clinton Gillen, who had made his home with the complainant since his infancy, and at the time the deed was made the complainant had no means of support other than a pension of $12 per month, and at that time Clinton Gillen contemplated marriage and that Ella Gillen would go away from the home of her mother, and it was agreed that Clinton Gillen, when married, and his wife, should move into complainant's house and maintain and take care of complainant. Clinton Gillen, during the time he lived with the complainant, never contributed to the support of the family, although at the time the deed was made he was earning wages as a locomotive engineer, and the income of the complainant was only her small pension and what Ella Gillen could earn as a seamstress. Clinton Gillen did not take his wife to the home of the complainant but soon separated from her, when he again returned to the complainant's house and made his home with her and his aunt for two years, with the agreement that he was to pay board.

He remained two years, but after a few months ceased to pay board. He then married his present wife, Georgia Gillen, and he has not been at the complainant's house, or seen the complainant, for a number of years prior to the trial, although he resided in the same city where the complainant resided, nor has he in any way contributed to her support. This he admits, and says in his testimony he did not support the complainant because he did not have to, as she had an income of her own,—a pension of $12 per month,—and that he did not visit her because he could not get along with his Aunt Ella. The only reason for any complaint against his aunt disclosed by this record appears to have been that she objected to boarding him and doing his washing for nothing.

The defendants in error contend that the complainant conveyed the property to Clinton Gillen, subject to the life estate reserved to her, in accordance with the request of his father, who preferred the property to go to him rather than to the children of complainant. We do not think this contention is sustained by the evidence. It is strange that William Gillen did not have the fee conveyed to Clinton Gillen, subject to the life estate in his mother, if he desired Clinton Gillen to have the property after the death of his mother; and Nancy Gillen and Ella Gillen (the latter then a girl sixteen years of age) testified that no such arrangement was made at the time that the property was conveyed to Nancy Gillen, but that William Gillen gave the property to her absolutely, in consideration of what she had done for his wife and infant son and to provide for her a home. The evidence shows that William Gillen caused the premises in question to be conveyed to the complainant absolutely and that Clinton Gillen had no interest therein. In *Fabrice* v. *Von der Brelie*, 190 Ill. 460, on page 466, it is said: "The law is well settled in this State that where one conveys his real estate to another person in consideration that such person will support and maintain him during his

natural life, and after receiving such conveyance the grantee refuses to perform his part of the contract by furnishing such support and maintenance, a court of equity will grant relief by setting aside such deed of conveyance and re-investing the grantor with the title to the real estate.— *Frazier* v. *Miller,* 16 Ill. 48; *Kusch* v. *Kusch,* 143 id. 353; *McClelland* v. *McClelland,* 176 id. 83; *Oard* v. *Oard,* 59 id. 46; *Cooper* v. *Gum,* 152 id. 471."

The circuit court, in the opinion of this court, erred in not setting aside and canceling the deed from complainant to Clinton Gillen as a cloud upon the title of complainant to said premises.

The master, in stating the account between the complainant and Clinton Gillen, charged Clinton Gillen with $450, and interest, which he received at the time of the sale of lot 121, which aggregated the sum of $668.43, and credited him with the taxes and special assessments paid by him on lot 122, and interest, which aggregated the sum of $269.13, which left a balance of $399.30 due the complainant. We see nothing wrong in the statement of the account. At the time the lot was sold and the purchase money was divided it was the understanding of the parties that the complainant was to be supported and maintained in her old age by Clinton Gillen, and he having repudiated his agreement, it is not inequitable that he should restore to complainant all that he received by virtue of that agreement.

The decree of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree setting aside and canceling the deed from the complainant to Clinton Gillen and to enter a personal decree in favor of complainant, against Clinton Gillen, for $399.30, and interest.

*Reversed and remanded, with directions.*